SLIP OPINION

Cite as 2017 Ark. 262

# SUPREME COURT OF ARKANSAS

No. CR-16-125

| | |
|---|---|
| ARTHUR L. HICKS, JR.<br>APPELLANT | **Opinion Delivered** September 28, 2017 |
| V. | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DIVISION [NO. CR-2014-076] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE DAVID G. HENRY, JUDGE |
| | <u>AFFIRMED</u>. |

**KAREN R. BAKER, Associate Justice**

On July 2, 2015, Arthur Hicks, Jr., was convicted of capital murder by an Arkansas County jury. Pursuant to Ark. Code Ann. section 5-10-101(c)(1)(B)(2)(Repl. 2013), the parties agreed to allow the circuit court to sentence Hicks. The circuit court sentenced Hicks to life imprisonment with the possibility of parole in 28 years and an additional seven-years incarceration for the use of a firearm in the crime. Hicks timely appealed to this court. On April 7, 2017, we ordered rebriefing because the Attorney General failed to certify its review pursuant to Rule 4-3(i) of the Arkansas Rules of the Supreme Court. Subsequent to this order, the parties have filed additional briefs and the case is ripe for review.

From his conviction and sentence, Hicks presents two issues on appeal: (1) the circuit court erred in permitting hearsay testimony of the emergency medical technician under a hearsay exception and (2) the circuit court erred in denying Hicks's motion for directed

verdict because the evidence was not sufficient to sustain the conviction for capital murder.

On July 30, 2014, Hicks was charged with one count of capital murder in the July 22, 2014 death of Daniel Ruffin. The State's theory at trial was that Hicks, in the course of committing or attempting to commit a robbery, caused Ruffin's death. Vera Strange, Ruffin's mother, testified that she, her husband, and Ruffin lived at 1311 South Maple Street in Stuttgart. Ruffin's routine was to come home from his job at Wal–Mart, put his headphones on, and walk his dog, Lazarus, on the same path on the streets around their home every day. Ruffin's walks included passing the business that his mother and her husband owned, S & W Produce, which was less than a block from their home. Strange further testified that on the day of the crime, Ruffin left their home after work with his headphones on to walk his dog. Strange testified that after Ruffin left to go on his walk, she went to visit a friend at the hospital. While at the hospital, Strange received a phone call that Ruffin had been shot.

Radek "Eric" Sanek, Ruffin's neighbor, testified that he lived at 1304 South Maple Street, and on the day of the crime passed three boys walking south on Maple as he drove home between 4:30 and 5:00 p.m. Sanek identified Hicks as one of the boys he passed. Sanek testified that he was unloading cedar wood from his car and heard a gunshot. He further testified that he looked down the street and saw Ruffin holding his chest running toward his home screaming "Oh my God. Oh my God." Sanek and his wife ran to help Ruffin and found him bleeding, holding his chest, and lying underneath his truck. Sanek testified that he called 911 as his wife talked to Ruffin and tried to keep him calm until the paramedics arrived.

Next, Stuttgart Fire Department Fireman and Emergency Medical Technician, David Payan, testified that on the day of the crime, he responded to a call that a man who had been shot and was found underneath a pickup truck at 1311 Maple Street. Payan testified that when he arrived, Ruffin was halfway under the truck with a red stain on his shirt, and Payan could see a gunshot wound. Payan testified that he pulled Ruffin out from underneath the truck, cut his shirt off, and began to administer medical assistance to the gunshot wound that had gone through Ruffin's chest and exited from his back, known as a "through and through" wound. As to Ruffin's condition, Payan testified that "he was alert and oriented . . . he looked scared," and was alert enough to speak to Payan. Over Hicks's objection, Payan testified that while administering medical attention, he asked Ruffin about the shooting:

PAYAN: I was . . . trying to stop the bleeding and [Ruffin] told me that he was walking along the road and three – – three guys came up and asked him what he had in his pockets. And he said, "Nothing but a cell phone."

And one of them said to, "Give it to me."

And [Ruffin] said, "No."

And that's when one guy shot [Ruffin].

Payan also testified that upon examination, he was aware that Ruffin's left lung had no sounds at all and that Ruffin's condition was serious.

Kiasean Casey testified that on the day of the crime, around 4:00 p.m., he met Hicks and Kendall Smith at S & W Produce. Casey testified that he was on the phone and was walking approximately half a block in front of Hicks and Smith. Casey testified that as the

boys walked down Maple Street, he passed Ruffin. Casey further testified that after he passed Ruffin, he heard a gunshot go off. After he heard the gunshot, he turned and saw Ruffin and the blood all over his shirt. Casey testified that he stood in shock for approximately 45 seconds and then he ran to his uncle's house. Casey also testified that after he heard the gunshot, he saw Hicks putting the gun in his pocket as Hicks ran off.

Kendall Smith testified that on the day of the incident, he met up with Hicks and Casey at S & W Produce. Smith testified the boys left on foot, he was side by side with Casey, and Hicks was a few feet behind them. Smith testified that he heard Hicks say, "I'm going to hit him," as Ruffin was walking up the street toward the boys with his dog. Smith further testified that after he heard Hicks say, "I'm going to hit him," he heard a gun cock "like click/clack." Smith testified that he turned toward the noise of the gun and saw Hicks raising his hand with the gun, pointing it at Ruffin "like he was going to rob him." Further, Smith testified that he heard the following conversation between Hicks and Ruffin:

HICKS:     What's in your pockets?

RUFFIN:    A phone.

HICKS:     I need that.

RUFFIN:    Is that a BB gun? Is the gun fake?

HICKS:     No, it ain't fake. Do you want to see what the bullet feel like?

Smith testified that after Hicks said the gun was not a fake, Hicks shot Ruffin at point-blank range. Smith testified that he took off running, and before he got home he heard the sirens coming toward the area.

SLIP OPINION

Finally, Hicks testified in his own defense. Hicks testified that he did not have a conversation with Ruffin regarding the gun and did not realize that the gun was loaded. Hicks further testified that the gun went off accidentally, and after the gun fired he walked away not realizing that Ruffin had been shot. In Hicks's statement to the police immediately after the shooting he stated that he had shot Ruffin "for no reason." Hicks denied that he attempted to rob Ruffin.

Based on the above-stated facts, Hicks was convicted of capital murder and sentenced as described above. This appeal followed.

*Points on Appeal*

I. *Sufficiency of the Evidence - Robbery*

We now turn to Hicks's two points on appeal. Although Hicks challenges the sufficiency of the evidence in his second point on appeal, due to double-jeopardy concerns, we first address his challenge to the sufficiency of the evidence supporting his conviction. *Bowker v. State*, 363 Ark. 345, 352, 214 S.W.3d 243, 247 (2005). Hicks asserts that the circuit court erred in denying his motion for directed verdict, alleging that the evidence did not support his conviction for the murder of another person in the commission or attempted commission of a robbery. Hicks further contends that the State's proof of culpable mental state was insufficient to prove that he caused the death under circumstances manifesting extreme indifference to the value of human life.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Whitt v. State*, 365 Ark. 580, 232 S.W.3d 459 (2006). In reviewing a challenge

SLIP OPINION

to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005). This court will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* We need consider only that testimony that supports the verdict of guilty. *Id.* Further, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the evidence excludes every other reasonable hypothesis is left to the jury to decide. *Id.* Finally, the credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Additionally, when construing a statute, we must construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Thompson v. State*, 2014 Ark. 413, at 5, 464 S.W.3d 111, 114.

Hicks was convicted of capital murder under Ark. Code Ann. § 5-10-101(a), which states in pertinent part:

(a) A person commits capital murder if:

(1) Acting alone or with one (1) or more other persons:

(A) The person commits or attempts to commit:

SLIP OPINION

. . .

(v) Robbery, § 5–12–102;

. . . and

In the course of and in furtherance of the felony or in immediate flight from the felony, the person . . . causes the death of a person under circumstances manifesting extreme indifference to the value of human life[.]

Next, "robbery" is defined in Ark. Code Ann. § 5–12–102:

(a) A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person.

Finally, the underlying felony is an essential element of a capital–felony murder charge. *Flowers v. State*, 342 Ark. 45, 49, 25 S.W.3d 422, 425 (2000). To prove capital–felony murder, the State must first prove the felony. *Id*. Here, the prosecution needed to prove only that Hicks attempted to commit robbery. *Id*., Ark. Code Ann. § 5–10–101(a)(1); *Novak v. State*, 287 Ark. 271, 698 S.W.2d 499 (1985). An attempted robbery is established by proof that the defendant purposely engaged in conduct that constituted a substantial step in a course of conduct intended to culminate in the commission of a robbery. Ark. Code Ann. § 5–3–201(a)(2).

With these standards in mind, we turn to Hicks's challenge to the sufficiency of the evidence supporting his conviction. Hicks contends that the State failed to prove he committed or attempted to commit robbery but the gun went off accidentally. Turning to

SLIP OPINION

the facts of Hicks's case, we must review the testimony presented.

Sanek testified that on the day of the crime, he passed the three boys walking south on Maple as he was driving home around 4:30 – 5 :00 p.m. and identified Hicks as one of the boys that he passed. Sanek further testified that he was unloading his car and heard a gunshot. He testified that he looked down the street and saw Ruffin holding his chest, running toward his home, screaming, "Oh my God. Oh my God."

Smith testified that as the men walked together, Smith heard Hicks say, "I'm going to hit him," as Ruffin was walking up the street towards the men. Smith further testified that after he heard Hicks say "I'm going to hit him," he heard a gun cock, "like click/clack." Smith testified that he turned toward the noise of the gun and saw Hicks raising his hand with the gun, pointing it at Ruffin "like he was going to rob him." Further, Smith testified that he heard the following conversation between Hicks and Ruffin:

HICKS: What's in your pockets?

RUFFIN: A phone.

HICKS: I need that.

RUFFIN: Is that a BB gun? Is the gun fake?

HICKS: No, it ain't fake.  Do you want to see what the bullet feel like?

Smith testified after he heard Hicks state the gun was not fake, Hicks shot Ruffin at point blank range.

Next, Casey testified that while walking, after he passed Ruffin, he heard a gunshot go off.  After he heard the gunshot, he turned and saw Ruffin and the blood all over his shirt

and saw Hicks putting the gun in Hicks's pocket as Hicks ran off.

Payan, EMT, testified that he responded to the call where Ruffin had been shot and found Ruffin bleeding underneath a pickup truck at 1311 Maple Street. Over Hicks's objection, Payan testified that while administering medical attention, he asked Ruffin about the shooting:

> PAYAN: I was . . . trying to stop the bleeding and [Ruffin] told me that he was walking along the road and three – – three guys came up and asked him what he had in his pockets. And he said, "Nothing but a cell phone."
>
> And one of them said to, "Give it to me."
>
> And [Ruffin] said, "No."
>
> And that's when one guy shot [Ruffin].

Upon review, from the testimony set out above, we conclude that the State presented substantial evidence that Hicks purposely engaged in conduct that constituted a substantial step in a course of conduct intended to culminate in the commission of a robbery. Specifically, there was evidence that Hicks intended to rob Ruffin and took a substantial step in that direction when he approached Ruffin with a weapon, demanded his phone, and pointed the weapon at Ruffin at point-blank range. Here, the record demonstrates that there was sufficient evidence for the jury to find that Hicks committed the underlying felony of attempted robbery. Accordingly, in viewing the testimony in the light most favorable to the jury's verdict and that which is consistent with guilt, we hold that substantial evidence supports the jury's conclusion that Hicks committed capital murder.

Hicks next contends that the State's proof of culpable mental state was insufficient to

prove that Hicks caused Ruffin's death under circumstances manifesting extreme indifference to the value of human life. However, we do not reach the merits of this claim because Hicks did not challenge the State's proof of that element at trial, and the claim is therefore not preserved for review. We do not address arguments that are raised for the first time on appeal. *Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006); *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). Likewise, parties cannot change the grounds for an objection on appeal, but are bound by the scope and nature of their objections as presented at trial. *Id*; *Tavron v. State*, 372 Ark. 229, 231, 273 S.W.3d 501, 502 (2008). Accordingly, we do not find error and affirm the circuit court on Hicks's challenge to the sufficiency of the evidence.

## II. *Hearsay Testimony*

For his second point on appeal, Hicks asserts that the circuit court erred by allowing the State to introduce a hearsay statement by EMT David Payan regarding a statement Ruffin had made to him while receiving medical treatment. At trial, Hicks asserted that the statement was inadmissible hearsay and did not fall within one of the exceptions to hearsay: dying declaration, excited utterance or present sense impression. The circuit court allowed the testimony as "an exemption to the hearsay rule."

The State responds that the circuit court properly allowed the statement and this court should affirm the circuit court because the statement was admissible either as an excited utterance or as a dying declaration. The State further responds that the statement was admissible under "other hearsay exceptions."

Here, the statement Hicks contends the circuit court erroneously admitted occurred

during Payan's testimony about what the victim told him at the crime scene. Payan testified that he had responded to a 911 call and was administering medical care to Ruffin. Payan testified that Ruffin had suffered a gunshot wound that was through Ruffin's chest and exited out his back. As to Ruffin's condition Payan testified that "he was alert and oriented . . . he looked scared," and he was alert enough to speak to Payan. Over Hicks's objection, Payan testified that while administering medical attention, he asked Ruffin about the shooting:

> PAYAN: I was . . . trying to stop the bleeding and [Ruffin] told me that he was walking along the road and three – – three guys came up and asked him what he had in his pockets. And he said, "Nothing but a cell phone."
>
> And one of them said to, "Give it to me."
>
> And he said, "No."
>
> And that's when one guy shot him.

Payan also testified that upon examination, he was aware that Ruffin's left lung had no sounds at all and that Ruffin's condition was serious.

In reviewing evidentiary issues on appeal "the decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Morris v. State*, 358 Ark. 455, 193 S.W.3d 243 (2004); *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002). Moreover, we will not reverse absent a showing of prejudice. *Id*.

With regard to hearsay statements, Rule 801 of the Arkansas Rules of Evidence defines "Hearsay" as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay is

inadmissible except as provided by law or by the rules of evidence. Ark. R. Evid. 802 (2017).

Arkansas Rule of Evidence 803(2) provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

In analyzing Rule 803(2), we have recognized that there are several factors to consider when determining whether a statement falls under this exception: the lapse of time, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. *Davis v. State*, 362 Ark. 34, 207 S.W.3d 474 (2005); *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002); *Moore v. State*, 317 Ark. 630, 882 S.W.2d 667 (1994) (adopting these factors from the Eighth Circuit's decision in *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980)). For the exception to apply, there must be an event which excites the declarant. *Flores*, 348 Ark. 28, 69 S.W.3d 864. In addition, in order "to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." *Peterson v. State*, 349 Ark. 195, 199, 76 S.W.3d 845, 847 (2002) (quoting *Fudge v. State*, 341 Ark. 759, 769, 20 S.W.3d 315, 320 (2000)). The statements must be uttered during the period of excitement and must express the declarant's reaction to the event. *Moore*, 317 Ark. 630, 882 S.W.2d 667. It is for the circuit court to determine whether the statement was made under the stress of excitement. *Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994).

Here, Ruffin made the statement within minutes of being shot at point-blank range while Payan was rendering medical attention to Ruffin. The record demonstrates that Ruffin was bleeding and that he had crawled under his truck. Ruffin's statement was in reaction to the shooting, and Payan testified that Ruffin was alert and oriented, but scared. Based on the circumstances in this case, the statement was made in response to the shooting and was therefore admissible under Rule 802 as an excited utterance.

In this case, Ruffin's statement to Payan was made after Ruffin had been shot at point-blank range "through and through." Ruffin knew he was bleeding, he was hiding underneath his truck, and he was not trying to move. The evidence showed that Ruffin's condition was grave and that he was aware that his injuries were serious. Based on the facts of this case, we cannot say that the circuit court abused its discretion in determining that Ruffin's statement was admissible. Accordingly, we affirm the circuit court's ruling.

In compliance with Arkansas Supreme Court Rule 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Hicks, and no prejudicial error has been found.

Affirmed.

HART, J., concurs.

**JOSEPHINE LINKER HART, Justice, concurring.** I agree that this case should be affirmed. However, in my view, the victim's hearsay statement made to Stuttgart fire department EMT David Payan was admissible under a different hearsay exception: Rule 803(4) of the Arkansas Rules of Evidence, *Statements for Purposes of Medical Diagnosis or*

*Treatment*.  The rule states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

This rule expressly contemplates a response to questions whereas the excited utterance exception stated in Rule 803(2) of the Arkansas Rules of Evidence does not.[1]

In *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002), this court adopted a two-part test first promulgated by the Eighth Circuit in *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980). The two-part test is as follows: (1) is the declarant's motive consistent with the purpose of the rule; and (2) is it reasonable for the physician to rely on the information in diagnosis or treatment. *Flores*, 348 Ark. at 43, 69 S.W.3d at 874.

The *Flores* test, as applied to the facts of this case, supports the admission of the victim's statement. When the statement was made, David Payan had just provided emergency treatment to the victim's most obvious injury, a gunshot wound. Obviously, it was necessary for Payan to determine whether were other, less obvious injuries requiring attention. The

---

[1] I am mindful of the the mere fact that a response to a direct question does not, per se, make the excited-utterance exception inapplicable; however, in *Rodriguez v. State*, 372 Ark. 335, 337–38, 276 S.W.3d 208, 211 (2008), this court required, in addition to a startling event, that it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation, and the statement must express the declarant's reaction to the event. Here, the victim was describing the extent of his altercation with Hicks.

victim's response that his gunshot wound was not the result of an altercation in which he suffered other trauma was important information. In making his statement, the victim conveyed that he had no other injuries, and Payan reasonably did not conduct further examination before transporting the victim to the hospital. Significantly, the victim did not identify the perpetrator, nor was he asked to do so. *Cf. Flores*, *supra*.

It is the practice of this court not to reverse an evidentiary ruling by a circuit court when it uses the wrong reason to reach the right result. *Dandridge v. State*, 292 Ark. 40, 727 S.W.2d 851 (1987). Accordingly, I concur.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Misty Wilson Borkowski*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Bailey Kane*, Ass't Att'y Gen., for appellee.