SHAWN A. WOMACK, Associate Justice
On December 10, 2015, the bodies of Cherrish Allbright and her unborn child were found buried in an unmarked grave. Cherrish had an arrow through her back and she had suffered two, severe, blunt-force impacts to the back of her head, which caused her death. Brad Hunter Smith was arrested and charged with her murder. Following a jury trial in Cleveland County, he was convicted of capital murder and sentenced to death. On appeal, he only raises issues regarding the punishment phase of his trial. We affirm the conviction and sentence.
Smith does not challenge the sufficiency of the evidence on appeal, so only a brief recitation of the facts is required. Lee v. State , 327 Ark. 692, 696, 942 S.W.2d 231, 233 (1997). In November 2015, Allbright disclosed to Smith that she was pregnant with his child. Throughout the following weeks he made numerous comments to friends, family, and coworkers that he needed help committing a murder. Ultimately, *884 on December 3, 2015, Smith enlisted the help of his two friends, Jonathan Guenther and Joshua Brown, to kill Allbright and hide her body. According to the plan, Brown would call Allbright under the pretenses of wanting to smoke marijuana and then drive her to a nearby field where Guenther and Smith would be lying in wait.
When Brown arrived at the field with Allbright, Guenther and Smith were hiding behind some trees. When Allbright exited and walked to the front of the vehicle, Smith stood up and shot her through the back with a crossbow bolt. She attempted to get back into the vehicle, but Smith ordered her to get down on the ground on her knees. He then used a wooden baseball bat to hit her twice in the back of the head, killing her. The trio then loaded the body onto the back of a trailer, transported it to a gravesite behind Smith's house, and buried her.
On December 10th, officers from the Cleveland County Sherriff's Department brought Brown in for questioning on an unrelated matter and, upon encouragement from his mother, he confessed to the murder and led officers to the grave.[1] Based on the information Brown provided, officers from the Arkansas Game and Fish Commission were ultimately able to arrest Smith at his family's cabin on Belcoe Lake.
Smith was charged with kidnapping, abuse of a corpse, and capital murder. The jury convicted him on all charges and he was sentenced to twenty years, ten years, and death respectively. He only challenges his sentence for capital murder on appeal.
I. Prohibition of Aggravating Circumstances
For his first point, Smith argues that prejudicial error occurred when the circuit court permitted the jury to consider the death of Allbright's unborn child as an aggravating circumstance. Arkansas Code Annotated section 5-4-604 sets forth the aggravating circumstances that the jury may consider for the imposition of the death penalty. Bowen v. State , 322 Ark. 483, 496, 911 S.W.2d 555, 561 (1995). The specific provision in question states that it is an aggravator if "[t]he person in the commission of the capital murder knowingly created a great risk of death to a person other than the victim or caused the death of more than one (1) person in the same criminal episode." Ark. Code Ann. § 5-4-604(4) (2013). Arkansas Code Annotated section 5-1-102(13)(B)(i)(a) contains the definition of "person" as it relates to the homicide statutes and states, "As used in §§ 5-10-101 -- 5-10-105, 'person' also includes an unborn child in utero at any stage of development." Smith argues that the circuit court should have granted his motion prohibiting the aggravating circumstance from being presented because the definition of person in section 5-1-102 could not apply to section 5-4-604.
The State in turn argues that this issue is not preserved for appeal because it was abandoned below. At trial, Smith filed a motion to prohibit the State from submitting an aggravating circumstances form to the jury. Attached to the motion was the form the State intended to submit to the jury, which included the definition of person in Ark. Code Ann. § 5-1-102(13). However, at a hearing outside the presence of the jury, the court inquired whether Smith objected to the definition or its placement on the form. Smith responded that he was objecting to the placement.[2] In his reply brief, Smith acknowledges that *885 his argument was abandoned, but nevertheless contends that he may raise it on appeal based on our decision in Singleton v. State , 274 Ark. 126, 623 S.W.2d 180 (1981).
The general rule is that this court will not address errors raised for the first time on appeal. Id. at 129, 623 S.W.2d at 181 ; Hicks v. State , 2017 Ark. 262 at 10, 526 S.W.3d 831, 838. Likewise, parties cannot change their grounds for an objection on appeal, but are bound by the scope and nature of their objections as presented at trial. Hicks , 2017 Ark. 262 at 10, 526 S.W.3d at 838. However, in death-penalty cases we will consider errors argued for the first time on direct appeal when prejudice is conclusively shown by the record and this court would unquestionably require the trial court to grant relief under Rule 37 of the Arkansas Rules of Criminal Procedure. Singleton , 274 Ark. at 128, 623 S.W.2d at 181 ; Hill v. State , 275 Ark. 71, 77, 628 S.W.2d 284, 287 (1982) ; Hughes v. State , 295 Ark. 121, 122, 746 S.W.2d 557, 557 (1988).
In Singleton the defendant was sentenced to death for felony murder and life imprisonment for aggravated robbery. 274 Ark. at 128, 623 S.W.2d at 181. We affirmed the conviction for capital felony murder but set aside the conviction for the lesser included offense of aggravated robbery. Id. We noted that our recent decision in Swaite v. State , 272 Ark. 128, 612 S.W.2d 307 (1981), prohibited the entry of a judgment for capital felony murder and the underlying specific felony. Id. We therefore applied our holding to Singleton's case by invoking the death penalty exception. Id.
We decline to extend the exception to the circumstances argued here. Smith has not conclusively shown prejudice and he has failed to show that we would unquestionably grant him Rule 37 relief on the issue.[3] We note that enforcing a narrow interpretation of the death penalty exception ensures that it remains an exception and does not swallow the rule.
II. Improper Rebuttal Testimony
For his second point, Smith argues that the circuit court erred when it improperly permitted the prosecution to present rebuttal testimony. During the penalty phase of the trial, Smith presented testimony from Randall Jones, who worked for the Dallas County Detention Center. He testified that while Smith was awaiting trial, he was a model prisoner and never showed any signs of aggression or violence. After Smith rested, the State argued that it was entitled to present a rebuttal witness, Coby Rauls. Rauls testified that he was a deputy sheriff with Cleveland County and that he had transported Smith from one of his court appointments back to the detention center. During the transportation, Rauls recounted that Smith stated he would like to use the officer's night stick to beat the driver of the vehicle in front of him for excitement. Before Rauls testified, Smith's attorney argued that it wasn't rebuttal because the officer wasn't at the detention center to witness Smith's behavior. The court allowed the rebuttal noting that it related to Smith's behavior while he was still a prisoner.
Smith argues that the evidence was improper because Rauls's testimony was not in response to Jones's. The State in turn *886 argues that this argument was not presented to the circuit court. See Hicks , 2017 Ark. 262 at 10, 526 S.W.3d at 838. In his reply, Smith admits that he did not present this specific argument to the circuit court below. However, even if we address his argument, it is meritless.
The decision to admit rebuttal testimony is at the circuit court's discretion and we will not reverse unless the circuit court abused that discretion. Gilliland v. State , 2010 Ark. 135 at 11, 361 S.W.3d 279, 285. Here, Jones testified that Smith was a model prisoner. The State's rebuttal witness countered that assertion by Smith's comment in the squad car. Smith can't show that the circuit court abused its discretion by allowing Rauls to testify.
III. Scope of Rebuttal Closing Argument
Next, Smith argues that the court impermissibly allowed the State to go beyond the scope of the penalty-phase rebuttal closing argument and allowed the State to make emotionally charged comments. During the defense's closing, Smith's attorney stated, "[I]t doesn't matter if you give him life without parole or if you give him the death penalty. The only way my client will come out of that penitentiary is on a funeral home director's gurney." Once the State began its reply, Smith objected and argued that the State could not rehash its arguments and could only respond to the points he raised in his closing argument. The court ruled that the State could address Smith's argument that there was no difference between sentencing him to life or death and that the State would have the opportunity to discuss the sentencing forms. However, the court clarified that while it would allow the State to discuss the aggravating circumstances pertaining to their choice to pursue the death penalty, it would be limited in how much it could discuss. The State then addressed the jury as follows:
When we started this journey on Monday, counsel for the defendant said the State does not seek the death penalty very often. That is correct. The State seeks the death penalty when certain factors come before us. In this case, the motive was a factor. The fact that this young lady was pregnant and that means two lives are snuffed out at the same time.
Another factor [t]he State takes into consideration is the manner of the murder. This morning when we were doing Closing Arguments, I was referring to this as a hate murder in that just go shoot her with a shotgun and put her out of her misery. That's not what happened. You have what we consider torture, to be a bow and arrow through your body. So, that is a factor that [t]he State took into consideration, a huge factor, huge.
In these kinds of cases, lack of remorse. What happens in these cases? "Dear God, forgive me for what I have done." That's remorse, as opposed to, "Crack head, dope whore," all that stuff. Now, with that being said, no more emotion.
The State in turn argues that Smith did not make a contemporaneous objection to the prosecutions rebuttal. See Lard v. State , 2014 Ark. 1 at 26, 431 S.W.3d 249, 268. Smith objected when the prosecution expressed its intent to discuss the sentencing forms and its decision to pursue the death penalty. The circuit court ruled against him. We hold that he has preserved this issue for our review.
Arkansas Code Annotated section 5-4-602(5)(C) (Repl. 2013) specifically permits the State to "reply in rebuttal" during closing arguments. The circuit court is given broad discretion to control *887 counsel in closing arguments, and we do not interfere with that discretion absent a manifest abuse of it. Lee v. State , 326 Ark. 529, 532, 932 S.W.2d 756 (1996). Remarks made during argument that require reversal are rare and require an appeal to the jurors' passions. Wetherington v. State , 319 Ark. 37, 41, 889 S.W.2d 34, 36 (1994). The circuit court considered Smith's argument and specifically found that he stated that there would be no difference between life imprisonment and death. The court noted that there is a difference between death and life in prison and allowed the prosecution to discuss why it pursued the death penalty. The State briefly summarized the reasons why it chose to do so; namely, that Smith had shot the victim with a crossbow and that he lacked remorse. Smith cannot show that the circuit court manifestly abused its discretion or that the State's comments were specifically designed to appeal to the jurors' passions.
IV. Failure of the Circuit Court to Draw the Jury's Attention to the Proper Definition of Person.
For his fourth point, Smith argues that the circuit court failed to bring to the jury's attention that a "person" could not be an unborn child as it applies to the aggravating circumstances listed in Ark. Code Ann. § 5-4-604. Under Arkansas Rule of Appellate Procedure-Crim. 10(b)(ii), this court must consider whether the circuit court failed in its obligation to bring to the jury's attention a matter essential to its consideration of the death penalty. See also Wicks v. State , 270 Ark. 781, 606 S.W.2d 366 (1980). This court has recognized that an error in the completion of the penalty-phase verdict forms concerning mitigating circumstances can fall within the Wicks exception for matters essential to consideration of the death penalty. Thessing v. State , 365 Ark. 384, 408, 230 S.W.3d 526, 544 (2006) ; Wertz v. State , 2016 Ark. 249 at 8, 493 S.W.3d 772, 775-76 (court would review case where jury was erroneously submitted a single set of forms); Camargo v. State , 327 Ark. 631, 641-42, 940 S.W.2d 464, 469 (1997) (failure of jury to make the necessary written findings to impose the death penalty was essential to the jury's imposition of the death penalty); Bowen v. State , 322 Ark. 483, 499, 911 S.W.2d 555, 562 (1995).
Here, Smith's argument does not fall within the first Wicks exception. Our case law is clear that Wicks presents only narrow exceptions that are to be rarely applied. Anderson v. State , 353 Ark. 384, 398, 108 S.W.3d 592, 600 (2003). As it pertains to jury forms, we have applied the exception when the jury has incorrectly filled out forms, when forms have been missing, when the jury failed to make written findings as required by law, or when the jury was presented with an aggravator that violated the ex post facto clauses of the Constitution. In such instances we say the circuit court had an obligation to remedy the matter. Instead, Smith argues that the court should have instructed the jury that "person" does not include an unborn child. See Section I, supra . While the prosecutor chose not to file a separate homicide charge for the death of Cherrish Allbright's unborn child, there is no question under Arkansas law that he could have. See Ark. Code Ann. § 5-1-102(13)(B)(i)(a). Smith would have us apply the exception here to his argument for a limited statutory interpretation; we decline to do so.
V. Arbitrary Factor
Lastly, Smith argues that the death penalty was imposed under an arbitrary factor because the jury did not find that he lacked a significant criminal history. During the penalty phase of the trial, Smith did not present any evidence of his lack of criminal history. Instead, after the *888 defense had made its closing argument, Smith's attorney asked to readdress the jury because he forgot to mention that his client was young and had no previous criminal history. The prosecution and the court agreed that it was necessary to do so.
Thereafter, Smith's attorney readdressed the jury and stated that his client is 20 years old and "[t]he State and defense agree that my client has no prior convictions." Likewise, the State in its closing stated, "As the prosecuting attorney, I'm asking you to check the box that shows he has a minimal record and that he's young. We want you to fill that box." The jury form for mitigating circumstances instructs that "For each of the following mitigating circumstances, you should place a checkmark in the appropriate space to indicate the number of jurors who find that the mitigating circumstances probably exists." Despite the request in closing from both parties, the jury returned a signed form 2 and found the only mitigatory circumstance to be that Smith was young at the time of the murder. Specifically, on the section of the form that deals with mitigation of punishment based on criminal history, it says "Brad Hunter Smith has no significant history of prior criminal activity. Check one of the following:". The jury checked the option that said, "No member of the jury finds that this circumstance probably exists." Significantly, we note, the instruction makes no reference to prior convictions but rather prior criminal activity.
Under Rule 10(b)(vii) of the Arkansas Rules of Appellate Procedure-Crim., this court must review whether the death penalty was administered under the influence of passion, prejudice, or any other arbitrary factor. A jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance. Miller v. State , 2010 Ark. 1 at 41, 362 S.W.3d 264, 288. The jury alone determines what weight to give the evidence and may reject it or accept all or any part of it the jurors believe to be true. Id. However, when there is no question about credibility and when objective proof makes a reasonable conclusion inescapable, the jury cannot arbitrarily disregard that proof and refuse to reach that conclusion. Roberts v. State , 352 Ark. 489, 509, 102 S.W.3d 482, 496 (2003).
In his reply brief, Smith acknowledges that no evidence was presented to the jury in this regard. Instead, he argues that the absence of evidence establishes this mitigating circumstance. Smith had the opportunity to present evidence of his lack of criminal history to the jury but declined to do so. Further, the circuit court specifically instructed the jury that arguments of counsel are not to be considered evidence. Clearly, the jury did not act arbitrarily when it chose not to find Smith's history of criminal activity (or lack thereof) to be worthy of mitigating the punishment for his crime in this case.
The transcript of the record in this case has been reviewed in accordance with Arkansas Supreme Court Rule 4-3(i) (2018), which requires, in cases in which there is a sentence of life imprisonment or death, that we review all errors prejudicial to the defendant. None have been found.
Affirmed.
Special Justice Russell Meeks joins.
Hart, J., dissents.
Wynne, J., not participating.
Josephine Linker Hart, Justice, Dissenting.
I would reverse for a new sentencing trial. First, I disagree with the majority's *889 decision as to Part I of its opinion, which concludes that the issue of whether the jury should have been presented an aggravating circumstance pursuant to Ark. Code Ann. § 5-4-604(4) (Repl. 2013) (the Aggravating Circumstances Statute) is not preserved for our consideration. Smith's first argument is adequately preserved and is itself meritorious. Furthermore, regardless of whether this argument is adequately preserved, we still must address it because Rule 10(b)(ii) of the Arkansas Rules of Appellate Procedure-Criminal requires us to determine whether the circuit court satisfied its "obligation to bring to the jury's attention a matter essential to its consideration of the death penalty[.]" Second, as a separate matter, Rule 10(b)(ii) also requires reversal for the circuit court's failure to instruct the jury that Smith's lack of a prior criminal history was an undisputed mitigating circumstance.
Prohibition of Aggravating Circumstance - The Statutory Definitions of "Person"
The majority opinion details the factual circumstances relevant to this issue. Ark. Code Ann. § 5-4-604 sets forth the aggravating circumstances that a jury is to consider when determining whether one convicted of capital murder should be sentenced to either death or life in prison without the possibility of parole. Subsection (4) of the Aggravating Circumstances Statute lists the following as an aggravating circumstance:
(4) The person in the commission of the capital murder knowingly created a great risk of death to a person other than the victim or caused the death of more than one (1) person in the same criminal episode[.]
Ark. Code Ann. § 5-4-604(4) (emphasis added). The General Assembly added subsection (4) to the Aggravating Circumstances Statute in 1995. Act of Apr. 11, 1995, No. 1205, 1995 Ark. Acts 5783.
Ark. Code Ann. § 5-1-102 (the "Definitions Statute") sets out definitions to be used when interpreting the remainder of the criminal code set forth under Chapter 5, including the Aggravating Circumstances Statute.
Subsection (13) of the Definitions Statute provides the following definitions for "Person":
(13)(A) "Person ," "actor," "defendant," "he," "she," "her," or "him" includes:
(i) Any natural person ; and
(ii) When appropriate, an organization as defined in § 5-2-501.
Ark. Code Ann. § 5-1-102(13)(A) (emphasis added). Subsection (13)(A)(i) defines "person" as "any natural person" without restricting this definition's application to any particular set of criminal statutes; this definition applies to the entire criminal code. In 1999, the General Assembly amended subsection (13) of the Definitions Statute, see Act of Apr. 9, 1999, No. 1273, 1999 Ark. Acts 5209, to add section "(B)," which supplied a second definition of "person" applicable to a particular set of criminal statutes:
(B)(i)(a) As used in §§ 5-10-101 -- 5-10-105, "person" also includes an unborn child in utero at any stage of development.
(b) "Unborn child" means offspring of human beings from conception until birth.
Ark. Code Ann. § 5-1-102(13)(B)(i)(a) -(b) (emphasis added).
Smith's argument is simple. Subsection (13)(A)(i)'s "any natural person" definition applies to the Aggravating Circumstances Statute, and subsection (13)(B)'s "unborn child" definition specifically does not; the latter definition applies only to §§ 5-10-101 to -105, which are the homicide-charging *890 statutes. Accordingly, while the prosecution certainly would have been within its statutory right to charge Smith with a murder count for the death of Allbright's unborn child, the prosecution should not have been able to use the death of Allbright's unborn child as an aggravating circumstance in favor of sentencing Smith to death. There is no ambiguity or conflict in the plain language of these statutes, and even if there were, the Rule of Lenity would require us to interpret the statutes in favor of the defendant. "We construe criminal statutes strictly, resolving any doubts in favor of the defendant." Thompson v. State , 2014 Ark. 413, at 5, 464 S.W.3d 111, 114 (Arkansas Supreme Court ruling that defendant could not be convicted under statute for felony failure to appear when he had not yet been charged with a criminal offense).
Furthermore, when construing multiple legislative acts implicating the same issue, this court "must presume that when the General Assembly passed the later act, it was well aware of the prior act." Reed v. State , 330 Ark. 645, 649, 957 S.W.2d 174, 176 (1997). Subsection (4) of the Aggravating Circumstances Statute was already on the books when the legislature added subsection (13)(B) to the Definitions Statute. Accordingly, we must presume that the legislature knew what it was doing when it drafted subsection 13(B) of the Definitions Statute to apply only to §§ 5-10-101 to -105, and not to subsection (4) of the Aggravating Circumstances Statute.
I disagree with majority's decision not to address this argument for Smith's failure to preserve the issue for our review. Indeed, Smith's counsel acknowledges that he abandoned the argument below. However, Smith argues that this court should nonetheless consider the argument here because this is a death-penalty case, and counsel's abandonment of the argument would unquestionably warrant relief under Rule 37 of the Arkansas Rules of Criminal Procedure for ineffective assistance of counsel. Singleton v. State , 274 Ark. 126, 128, 623 S.W.2d 180, 181 (1981) ("In death penalty cases we will consider errors argued for the first time on direct appeal where prejudice is conclusively shown by the record and this Court would unquestionably require the trial court to grant relief under Rule 37."). Smith's counsel has done the honorable thing and "fallen on his sword" for his client, acknowledging in his brief,
Counsel abandoned that argument, which ultimately would have limited (the State) to the presentation of a single aggravating circumstance, in favor of an argument that accomplished little, if anything, left both aggravating circumstances intact, and thereby precipitated an unreliable result. This Court would unquestionably have required the circuit court to grant Rule 37 relief. Accordingly, Singleton applies, and the merits may be addressed.
Because counsel's decision to abandon this argument at trial prejudiced and in no way served his client's interests, and because the argument itself is plainly correct, I would address the argument and reverse for a new sentencing trial.
Indeed, this court must address this issue pursuant to Rule 10(b)(ii), as Smith argues and as set forth in greater detail below regarding Smith's lack of a prior criminal history. The majority declines to do so under the auspices that this case does not fall within one of the " Wicks exceptions" to the objection requirement, specifically ruling that "Smith would have us apply the exception to his argument for a limited statutory interpretation; we decline to do so," without more. This conclusion cuts directly against the cases the majority cites in support, which have acknowledged *891 the applicability of such an exception in similar and even far less compelling circumstances. See, e.g. , Wertz v. State , 2016 Ark. 249, at 8, 493 S.W.3d 772, 775-76 (court reversing for new trial where case was erroneously submitted to jury on a single set of verdict forms); Camargo v. State , 327 Ark. 631, 641, 42, 940 S.W.2d 464, 469 (1997) (failure of jury to make the necessary written findings to impose the death penalty was essential to the jury's imposition of the death penalty); Bowen v. State , 322 Ark. 483, 499, 911 S.W.2d 555, 562 (1995) (failure to object to application of ex post facto law did not waive argument on appeal because issue was essential to jury's consideration of the death penalty).
No Mitigating Circumstance for Smith's Lack of Criminal History
As the majority sets out in its opinion, the jury in this case did not find a mitigating circumstance for the fact that Smith has no significant prior criminal history. This transpired despite the fact that Smith's attorneys, the State's attorneys, and the trial court all agreed that Smith has no significant prior criminal history, and the fact that both Smith's attorneys and the State's attorneys specifically instructed the jury to check the box on the verdict form to indicate the jury's finding that this mitigating circumstance exists. Smith argues that this amounts to a verdict reached under an "arbitrary factor." The majority finds no basis for reversal on this issue because Smith's counsel only alleged his client's lack of criminal history during closing arguments (as opposed to actually presenting evidence of that fact during Smith's case-in-chief), and because the circuit court instructed the jury that closing arguments from counsel were not evidence. The circuit court did not instruct the jury that it should find that a mitigating circumstance exists for Smith's lack of significant prior criminal history, and the majority therefore concludes that the jury did not reach its decision under an arbitrary factor.
I take a different view of this issue from that expressed by the majority and argued by Smith. Rule 10 of the Arkansas Rules of Appellate Procedure-Criminal, provides for "mandatory review" of certain issues in cases in which a jury returns a death sentence. Rule 10(b) of Arkansas Rules of Appellate Procedure-Criminal. One of those issues we must review is "whether the trial court failed in its obligation to bring to the jury's attention a matter essential to its consideration of the death penalty[.]" Rule 10(b)(ii). Whether formulated specifically as a formal "stipulation" or otherwise, I submit that in a death-penalty trial where literally every attorney participating in the proceeding, including the trial judge himself, all agree that a mitigating circumstance exists, the undisputed existence of that mitigating circumstance constitutes "a matter essential to [the jury's] consideration of the death penalty" under Rule 10(b)(ii). Indeed, it is difficult to conceive of an issue to which this rule, which is at play only in death-penalty cases, would more directly apply. The circuit court should have instructed the jury as to the existence of this mitigating circumstance, and Rule 10 provides that our review of this question is "mandatory" without regard to whether or how the underlying issue has been raised or argued. Accordingly, I would reverse and remand for a new sentencing trial.

Brown was a minor at the time of the murder.

The definition of "person" was never read to the jury. However, the prosecutor referenced the definition in its closing arguments and the submitted jury form instructed the jury that it could consider the death of Allbright and her unborn child.

We are not passing on the merits of Smith's claim. We hold that the issue is not properly preserved for our review.