Cite as 2024 Ark. 147

# SUPREME COURT OF ARKANSAS
No. CR–23–441

|  |  |
|---|---|
| | **Opinion Delivered:** October 17, 2024 |
| TIMOTHY WAYNE ROSS | |
| APPELLANT | APPEAL FROM THE DALLAS COUNTY CIRCUIT COURT |
| V. | [NO. 20CR-21-18] |
| STATE OF ARKANSAS | HONORABLE SPENCER G. |
| APPELLEE | SINGLETON, JUDGE |
| | <u>AFFIRMED</u>. |

**KAREN R. BAKER, Associate Justice**

On February 28, 2023, a Dallas County Circuit Court jury convicted appellant, Timothy Wayne Ross, of rape, second-degree sexual assault, and sexually grooming a child, for which he was sentenced to concurrent terms of life imprisonment, twenty years' imprisonment, and six years' imprisonment, respectively. On appeal, Ross argues that the circuit court abused its discretion by allowing the trial to proceed with Ross in absentia when there was evidence that he did not cause his absence within the meaning of Arkansas Code Annotated section 16-89-103 (Repl. 2005).[1] We affirm.

---

[1]When Ross's appeal was initially before us, the jury verdict forms were not included in the record of the proceedings. On April 25, 2024, we remanded the case to settle and supplement the record. *See Ross v. State*, 2024 Ark. 70, at 1 (per curiam). On May 23, a supplemental record containing the necessary verdict forms was filed.

## I. *Facts and Procedural History*

Because Ross does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary. This appeal stems from the sexual abuse committed against Ross's eleven-year-old step-granddaughter, Minor Victim ("MV"), in August 2020. On March 15, 2021, Ross was charged with one count of rape in violation of Arkansas Code Annotated section 5-14-103 (Supp. 2023); one count of second-degree sexual assault in violation of section 5-14-125 (Supp. 2023) (effective until Jan. 1, 2024); and one count of sexually grooming a child in violation of section 5-27-307 (Repl. 2013). Ross's jury trial was held on February 27–28, 2023.

The record before us establishes the following facts. MV's father would take her to spend time at the home of Mary and Timothy Ross, MV's grandmother and step-grandfather, during his custodial periods every other weekend. MV testified that, beginning when she was around eleven years old, Ross began touching her inappropriately each time she would visit. Specifically, MV testified that Ross had touched her breasts and private parts underneath her clothing, licked her breasts, and put his fingers inside her private parts. Additionally, MV testified that Ross had shown her a pornographic video in the past and that he had also once made MV touch his private parts.

Ross was present in the courtroom on the first day of his trial, and at the end of the day, the circuit court announced that the trial would resume at 8:30 the following morning. However, Ross did not show up the next morning for the second day of trial. The circuit court asked Ross's counsel whether he had been in contact with Ross that morning, and counsel responded that Ross had informed him at approximately 7:30 a.m. that he had

"worked a [beaver] trapping job this morning, and that his GPS was showing he would be here at 8:35." Counsel said that Ross later assured him that he would make it on time after all. However, when Ross ultimately did not show, his counsel stated that he called Ross repeatedly and that each call went straight to voicemail. The circuit court issued a bench warrant and directed the sheriff's office to locate Ross. The circuit court held that the trial would proceed as scheduled because it had already started with Ross present, and Ross's counsel responded, "I have no objection to that, Your Honor . . . the trial has been started. [Ross] was present all day yesterday. He was instructed to be here at 8:30 this morning . . . so if the Court wishes to proceed, I have no problem proceeding in absentia." The trial resumed, and the State began calling its witnesses.

Later that morning, the circuit court convened a brief conference with the State and Ross's counsel in its chambers to speak with a sheriff's deputy on the telephone. The circuit court informed counsel that the sheriff's office had made several unsuccessful attempts to contact Ross, and that the deputy had seen two vehicles at Ross's residence. The circuit court cautioned that the deputy should not enter Ross's residence without a showing of exigent circumstances, and the State warned the deputy that Ross had made prior references to threatening his own life if he were ever charged in this case. Specifically, the State explained that Ross had expressed that "he didn't feel he deserved to live."

After a brief recess, the State and Ross's counsel joined the circuit court once more in chambers, and the State reached Dallas County Sheriff Mike Knoedl by telephone. Knoedl stated that the sheriff's office had made contact with Ross's wife, Mary, at Ross's residence. According to Knoedl, Mary said, "I knew I should have went with him today[,]"

3

and she further revealed that Ross had told her earlier that morning that "she didn't have to testify today [and] there wasn't no sense in her going." Knoedl explained that Mary reportedly had no clue where Ross was and that all of her attempted phone calls to Ross had gone straight to voicemail, which left her "terribly upset." Knoedl confirmed that the sheriff's office would continue its efforts to locate Ross. At that time, Ross's counsel informed the circuit court that when Ross had called him earlier that morning, he said, "[T]hey are going to crucify me." Ross's counsel asked Knoedl whether Mary had indicated to him that she would still be willing to come testify at trial and explained that "[i]f we continue on with this trial, I need her as a witness." At the conclusion of the telephone call with Knoedl, Ross's counsel moved for a continuance "due to [the] unavailability of [Ross] and under the conditions his wife is not in a condition to testify." The State opposed the motion for continuance but explained that it would not object to the circuit court giving Ross's counsel an opportunity to contact Mary and speak with her directly. The circuit court noted that the State still had several witnesses left, which meant that Ross's counsel would have an opportunity to contact Mary at lunchtime.

By the time the State rested its case, Ross had still not appeared at trial. Ross's counsel once again moved for a continuance "based on the unavailability of the defendant." Specifically, Ross's counsel stated that he would like to continue the matter until Ross could be located so that Ross could testify on his own behalf as planned. The State opposed the motion for continuance, responding that Ross was present for the first day of trial and had since voluntarily excused himself from assisting his counsel, which did not constitute a proper basis for a continuance. The circuit court denied the motion for continuance and

4

instructed the defense to move forward with its case. Mary testified on Ross's behalf later that day, stating that she did not believe MV's allegations were true.

On February 28, 2023, Ross was convicted on all charges. In accordance with Arkansas Code Annotated section 16-89-103(a)(2)(B), the circuit court delayed Ross's sentencing until Ross was located and brought back before the court on March 15.[2] This timely appeal followed.

## II. *Point on Appeal*

For his sole point on appeal, Ross contends that the circuit court abused its discretion by allowing the trial to proceed with Ross in absentia when there was evidence that he did not cause his absence. Specifically, Ross asserts that under the plain language of Arkansas Code Annotated section 16-89-103, the circuit court has discretion to proceed with a trial in the defendant's absence only if the defendant is present at the beginning of trial and then causes himself to be unable to appear. Ross alleges that there was sufficient doubt as to the reason for his absence from court on the second day of trial, and that all evidence seemed to point to the fact that Ross was making his way to court. Ross contends that his absence deprived the jury of his expected testimony and deprived him of the opportunity to confront adverse witnesses.

As an initial matter, the State contends that Ross's claims are not properly before us because the argument Ross presents on appeal is different than the argument he made below.

---

[2]This statute provides that "[i]f the indictment is for a felony, the defendant must be present during the trial[,]" but that under certain circumstances, "the trial may either be stopped or progress to a verdict at the discretion of the court." Ark. Code Ann. § 16-89-103(a)(1)−(2)(A)(i). Relevant here, subdivision (a)(2)(B) specifies that "[h]owever, *judgment shall not be rendered until the presence of the defendant is obtained*." (Emphasis added.)

We have routinely held that we do not address arguments that are raised for the first time on appeal. *Hicks v. State*, 2017 Ark. 262, at 10, 526 S.W.3d 831, 838. Likewise, "a party is bound by the nature and scope of the objections and arguments made at trial and may not enlarge or change those grounds on appeal." *Stewart v. State*, 2012 Ark. 349, at 8, 423 S.W.3d 69, 74.

Here, the record demonstrates that Ross's counsel did not initially object to proceeding without Ross on the second day of trial. However, Ross's counsel later moved for a continuance due to Ross's unavailability and because Mary was purportedly not in any condition to testify. The second motion for continuance was premised on similar grounds––namely, his counsel argued that a continuance was needed because the "unavailability of the defendant" prevented Ross from testifying on his own behalf as planned. Therefore, below, Ross's counsel did not seek a continuance on the basis that Ross did not cause his own absence within the meaning of section 16-89-103 as Ross argues now on appeal. Because Ross has changed his argument on appeal and did not present this argument to the circuit court, his claims are not preserved for our review. Consequently, we do not reach the merits of Ross's argument.

III. *Rule 4-3(a) Review*

Pursuant to Arkansas Supreme Court Rule 4–3(a), the record has been reviewed for all objections, motions, and requests that were decided adversely to Ross, and no prejudicial error was found.

Affirmed.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.
*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.