SLIP OPINION

Cite as 2017 Ark. 261

# SUPREME COURT OF ARKANSAS

No. CR-17-149

|  |  |
|---|---|
| BRAD S. HORTENBERRY<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** September 28, 2017<br><br>APPEAL FROM THE GREENE COUNTY CIRCUIT COURT<br>[NO. 28CR-15-674]<br><br>HONORABLE CHARLES BRENT DAVIS, JUDGE<br><br><br>AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Brad S. Hortenberry was convicted by a Greene County jury of one count of rape and one count of sexual indecency with a child, for which he was sentenced to concurrent terms of life and seventy-two months, respectively. The victim of both crimes, D.D., was under the age of thirteen when appellant performed oral sex on him. For reversal, appellant contends that the circuit court abused its discretion by admitting evidence, in violation of Arkansas Rules of Evidence 403 and 404(b) (2016), that appellant performed similar sexual acts on two other boys, who are around the same age as D.D., and on a physically disabled man who lived with appellant. We affirm.

I. *Factual and Procedural Background*

A. Pretrial

On November 17, 2015, the State filed a felony information charging appellant with one count of rape, in violation of Arkansas Code Annotated section 5-14-103(a)(3)(A)

(Repl. 2013),[1] and one count of sexual indecency with a child, in violation of Arkansas Code Annotated section 5-14-110(a)(1).[2] Appellant filed a pretrial motion in limine requesting that the circuit court prohibit the State from presenting any evidence of other crimes, wrongs, or acts allegedly committed by him. The State filed a motion in limine seeking a pretrial ruling that the testimony of three witnesses, C.R., D.M., and B.C., would be admissible under the pedophile exception to Rule 404(b) and that evidence of prior acts of sexual misconduct would be admissible to show appellant's motive, opportunity, intent, plan or knowledge, or absence of mistake.

At a pretrial hearing on the admissibility of the testimony, the State averred that C.R. and D.M. are young boys who alleged that appellant had performed oral sex on them and that the sexual abuse had occurred whenever they spent the night at appellant's house and were in appellant's care. Appellant disputed that the boys had been in his care and objected to their testimony. The circuit court found that C.R. and D.M. are around the same age as the victim, D.D., that the sexual acts they described were similar to those acts alleged by D.D., and that the boys were all under appellant's care and supervision when the acts occurred. Accordingly, the circuit court ruled that the evidence was admissible under the pedophile exception to show "a depraved sexual preference or conduct" similar to that

---

[1] A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Repl. 2013).

[2] A person commits sexual indecency with a child if being eighteen years of age or older, the person solicits another person who is less than fifteen years of age or who is represented to be less than fifteen years of age to engage in sexual intercourse, deviate sexual activity, or sexual contact. Ark. Code Ann. § 5-14-110(a)(1) (Repl. 2013).

alleged by the victim. The circuit court also ruled that the evidence was admissible under Rule 404(b) because it had independent relevance to certain issues that the jury would have to decide, such as intent and motive.

The State called B.C. to testify at the hearing. B.C., who was thirty-one years old at the time of trial, testified that he has cerebral palsy, that he has been confined to a wheelchair all his life, and that he is "supposed to be mildly mentally retarded." He further stated that because of his physical limitations, he needs assistance with things such as getting on and off a toilet, bathing, managing his finances, and preparing his meals. B.C. began living with appellant in Indiana when he was nineteen years old and did so for eleven or twelve years. B.C. moved with appellant from Indiana to Arkansas in 2006. B.C. stated that because he could not bathe himself, appellant would give him baths. B.C. testified that one time, appellant bathed him and then laid him on the bed and said, "I'm gonna show you what feels good." He said that appellant "sucked my private parts . . . and then jacked off into a paper towel." B.C. pushed appellant away. B.C. said that appellant did the same thing to him on one or two other occasions. B.C. also said that appellant told him that if he ever told anybody what had happened, appellant would get in trouble.

Appellant argued that B.C.'s testimony was inadmissible under Rule 404(b) because it was being offered to show only that appellant was "some bad guy who commits bad acts." Appellant also argued that B.C.'s testimony did not fit within the pedophile exception because B.C. was an adult when the alleged sexual conduct occurred. The State responded that, despite B.C.'s age, because of his disabilities and because he was under appellant's care, the pedophile exception should apply to him. Alternatively, the State argued that B.C.'s

testimony was admissible under Rule 404(b) to show appellant's plan, scheme, or modus operandi.

The circuit court stated that it was not aware of any cases in which the pedophile exception had been applied to an adult with physical and mental disabilities but noted that those who prey on children could have the same "depraved proclivity for such activities" toward an older person who is physically or mentally unable to resist the sexual advances. The circuit court found that B.C. was under appellant's "care and control" and that B.C. depended on appellant for his basic needs. The circuit court had the opportunity to observe B.C. while he testified and noted that B.C. had "significant involuntary movement" and "exhibited some exertion . . . in an effort just to try to remain sitting on his seat during the course of his testimony." The circuit court found that B.C. was "relatively defenseless to fight off or challenge . . . the sexual approaches" of appellant. In addition, the circuit court found that the acts described by B.C. were "consistent with the type of sexual activity that [appellant] is accused of committing with the victim in this case." The circuit court ruled that B.C.'s testimony was therefore admissible under the pedophile exception. Alternatively, the circuit court ruled that "under strictly a 404(b) analysis, regardless of the pedophile exception," B.C.'s testimony had independent relevance to show appellant's motive, intent, and absence of mistake or accident. The circuit court further ruled that the probative value of B.C.'s testimony outweighed its prejudicial effect and that it would be admissible at trial.

## II. *Trial*

D.D., the victim in this case, was thirteen when he testified at trial. D.D. was a friend and classmate of appellant's stepson, D.H. D.D. testified that he and D.H. played together at appellant's home. D.D. sometimes spent the night there. When staying overnight, D.D. slept on the living room floor on a pallet, and appellant slept in a chair in the living room. D.D. testified that appellant touched D.D.'s penis with his mouth "fifteen or more times." D.D. stated that appellant would put D.D.'s penis in his mouth and "move [] his mouth up and down on it." According to D.D., these incidents occurred in appellant's living room and back bedroom.

D.D. said that he sometimes spent time with appellant in a hot tub that was in an outbuilding on appellant's property. D.D. testified that he always wore his swimming trunks while in the hot tub but that appellant was naked whenever he got in the hot tub with D.D. D.D. stated that appellant provided him with alcoholic beverages and that appellant bought video games for D.D. and other children.

D.D.'s mother, Misty Dancer, testified that she had been a close friend of appellant's for eight to ten years and that her husband had known appellant for approximately twenty years. She stated that she had become acquainted with appellant through D.D.'s friendship with D.H. Dancer stated that she and her family often attended gatherings at appellant's home. While there, they frequently spent time in appellant's outbuilding, which Dancer referred to as a "man cave." She said that the "man cave" was equipped with a bar and a hot tub. Dancer testified that she allowed D.D. and her other children to spend the night

with appellant and that appellant had bought the kids "numerous things," such as shoes and video games.

C.R., who was fifteen years old at the time of trial, testified that he would go to appellant's house when he visited his grandmother, who lived a few miles from appellant's house. When he went to appellant's house, he played video games, rode four-wheelers, and walked in the woods surrounding appellant's property. C.R. stated that he was twelve years old when he started going to appellant's house and that he sometimes stayed there on weekends or for "weeks at a time." C.R. stated that the first time he spent the night at appellant's house, appellant gave him a "tiny white pill" to help him sleep better. C.R. said that the pill made him feel "strange." C.R. and appellant slept on pallets on the living room floor. C.R. testified that, during the night, when "the medicine wore off," he woke up and did not see appellant on the pallet next to his. C.R. said that his penis felt wet, and he realized that it was in appellant's mouth. C.R. testified that another time when he spent the night at appellant's house, appellant came into the room where he was watching a movie and "asked me if I was horny yet." C.R. responded, "No," and appellant left. C.R. also testified that appellant once tried to bathe him and that he saw appellant giving baths to other boys. According to C.R., appellant would help the boys "scrub themselves . . . everywhere" on their bodies. C.R. related that on one occasion, appellant was wearing boxer shorts while bathing D.M. C.R. further testified that he saw appellant give "little white pills" to D.D. and D.M. and that he heard appellant tell them that the pills would "help them sleep." C.R. said that appellant bought him a BB gun, Nerf guns, and headsets and that he had bought similar gifts for other children.

C.R's mother, Stephanie Bates, testified that C.R. frequently visited appellant's home, sometimes staying for weeks at a time. Bates said that lots of children spent time at appellant's home and that while there, they swam in appellant's pool, rode four-wheelers, and played videogames. Bates testified that one time C.R. could not sleep and asked her if he could have a pill like appellant had given him to sleep. Bates said that appellant bought C.R. many gifts, including a BB gun, a calculator, and Nerf guns. She said that she did not allow C.R. to keep the gifts and sent them back to appellant.

D.M., C.R.'s cousin, was thirteen years old when he testified at trial. D.M. stated that whenever he spent the night at appellant's house, he usually slept on the living room floor and that appellant slept on the floor with him or in a chair. D.M. further stated that every time he spent the night at appellant's house, appellant gave him a "round white pill" to help him sleep. D.M. said that the pill made him fall asleep faster than he normally would and that the pill made it harder for him to wake up. D.M. testified that appellant made him uncomfortable because he would "always touch my balls a lot" and would "jack me off [a] lot when we were in the bath." D.M. explained that when he used the term "jack me off," he meant that appellant would "move his hand up and down" on D.M.'s penis while D.M. was in the bathtub. D.M. stated that once when he was asleep at appellant's house, he "woke up feeling something" and realized that appellant was sucking his penis. Appellant took D.M. on outings, and D.M. said that, one time, he and appellant were at a fair and appellant tried to get D.M. to go into a restroom so appellant could masturbate him. D.M. testified that appellant said, "Come on, come on, I want to go jack you off in the bathroom." D.M.

told him no. D.M. also said that appellant took him to Walmart and bought him things, such as movies and clothes.

D.M.'s grandmother, Jerri Haywood, also testified at trial. She said that D.M. lived with her and that she got custody of him when he was six years old. Haywood said that she first met appellant when D.M. and D.H. were in first grade and played basketball together. She said that she also attended the same church as appellant and his family. Haywood testified that appellant spent time with D.M. at her house and that they went to appellant's house for cookouts. She said that she allowed D.M. to spend the night at appellant's house. Haywood stated that appellant frequently bought gifts for D.M. She said that appellant bought an air gun for D.M., even though she had told appellant not to do so. Haywood testified that appellant bought deodorant and cologne for D.M. and that appellant bought underwear for D.M. "because he wanted him to wear those little boxer shorts."

The State called B.C. to testify at trial. The substance of his testimony was the same as his testimony at the pretrial hearing.

After hearing additional evidence and closing arguments, the jury retired to reach its verdict. The jury found appellant guilty of rape and sexual indecency with a child. Appellant was sentenced to life imprisonment for rape and a concurrent term of seventy-two months for sexual indecency with a child.

II. *Arguments on Appeal*

Appellant contends that, pursuant to Rule 404(b), the circuit court abused its discretion in allowing C.R., D.M., and B.C. to testify about appellant's sexual conduct with them. He also challenges the admission of the bad-acts evidence under Rule 403,

SLIP OPINION

contending that the prejudicial effect of the evidence outweighs its probative value. The State contends that the testimony of C.R. and D.M. was admissible under the pedophile exception to Rule 404(b). The State further contends that B.C.'s testimony was admissible under Rule 404(b) or, alternatively, under the pedophile exception to Rule 404(b).

### III. *Applicable Law*

Rule 404(b) states that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The first sentence provides the general rule excluding evidence of a defendant's prior bad acts, while the second sentence provides an exemplary, but not exhaustive, list of exceptions to that rule. *Craigg v. State*, 2012 Ark. 387, 424 S.W.3d 264. We have explained that evidence is not admissible under Rule 404(b) simply to establish that the defendant is a bad person who does bad things. *See id.*, 424 S.W.3d 264. Rule 404(b) permits the introduction of evidence of prior bad acts if the evidence is independently relevant to make the existence of any fact of consequence more or less probable than it would be without the evidence. *See, e.g.*, *Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325.

Additionally, this court has recognized a separate "pedophile exception" to the general rule that evidence of a defendant's prior bad acts cannot be used to prove that the defendant committed the charged crime. *Craigg*, 2012 Ark. 387, 424 S.W.3d 264. The pedophile exception allows the State to introduce evidence of a defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with the person or class of persons with whom the defendant has an intimate relationship. *E.g.*,

*Hendrix v. State*, 2011 Ark. 122. The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *E.g.*, *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005). There are two requirements for this exception to apply: (1) a sufficient degree of similarity between the evidence to be introduced and the charged sexual conduct, and (2) evidence of an "intimate relationship" between the defendant and the victim of the prior act. *See, e.g.*, *Rohrbach v. State*, 374 Ark. 271, 287 S.W.3d 590 (2008).

Even if evidence is admissible under a bad-acts exception, the evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Ark. R. Evid. 403; *see, e.g.*, *Holland v. State*, 2015 Ark. 341, 471 S.W.3d 179 (stating that evidence to be admitted under the pedophile exception is also subject to exclusion under Rule 403); *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006) (noting that even if evidence meets the requirements of Rule 404(b), the evidence may still be excluded under Rule 403). Thus, a circuit court may refuse to admit evidence that is unfairly prejudicial to the defendant, even if it might be relevant.

Finally, we have held that a circuit court has broad discretion in deciding evidentiary issues, and its decision will not be reversed absent an abuse of discretion. *E.g.*, *Rounsaville v. State*, 2009 Ark. 479, 346 S.W.3d 289. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *E.g.*, *Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004).

IV. *Analysis*

A. Testimony of C.R. and D.M.

Appellant contends that no exception to Rule 404(b) was applicable to the testimony of the three witnesses. The State responds that the testimony of C.R. and D.M. was admissible under the pedophile exception to Rule 404(b).

C.R. and D.M.'s testimony at trial established a sufficient degree of similarity between the acts they alleged and the conduct with which appellant was charged in the instant case. D.D., who was thirteen at the time of trial, testified that appellant performed oral sex on him when he stayed at appellant's house. C.R., who was fifteen at the time of trial, testified that appellant performed oral sex on him when he stayed at appellant's house. Likewise, D.M., who was thirteen at the time of trial, testified that appellant performed oral sex on him when he stayed at appellant's house. D.D. testified that appellant provided him with alcohol. C.R. testified that appellant gave him a "tiny white pill" to help him sleep. D.M. testified that appellant gave him a "round white pill" to help him sleep. Each boy testified that when he spent the night at appellant's house, he slept on a pallet on the living room floor. Appellant also slept in the living room—in a chair or on a pallet on the floor. Testimony at trial revealed that appellant bought various gifts for the boys. Here, the similarities in appellant's conduct toward D.D., C.R., and D.M. demonstrate appellant's depraved sexual instinct and his proclivity for deviate sexual activity with prepubescent boys whom he has befriended. *See, e.g.*, *Kelley v. State*, 2009 Ark. 389, 327 S.W.3d 373 (concluding that there was a sufficient degree of similarity between the evidence to be introduced and the charged sexual conduct when both the witness and the victim, who

were around the same age when the alleged abuse occurred, testified to forced masturbation and oral sex and stated that appellant showed them pornographic movies).

In addition, the evidence showed that appellant had an intimate relationship with C.R. and D.M. The boys, at appellant's invitation, were frequent guests at his home. They were permitted to stay with appellant at his home for weeks at a time. The alleged abuse occurred whenever appellant was entrusted with the boys' care. Testimony at trial clearly established that their relationship with appellant was "close in friendship or acquaintance, familiar, near, or confidential." *Parish v. State*, 357 Ark. 260, 270, 163 S.W.3d 843, 849 (2004); *see also Craigg*, 2012 Ark. 387, 424 S.W.3d 264 (recognizing an intimate relationship between the perpetrator and victims when the perpetrator held the position of a care-taking adult with attendant authority); *Parish*, 357 Ark. 260, 163 S.W.3d 843 (concluding that the intimate-relationship factor of the pedophile exception was satisfied when the victim was an overnight guest in the perpetrator's home); *Dillard v. State*, 333 Ark. 418, 971 S.W.2d 764 (1998) (stating that an intimate relationship exists when the perpetrator puts himself in a position to obtain access to a child); *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998) (holding that an intimate relationship existed when the witness knew the accused and his family and was allowed to spend the night in the accused's home). We conclude that the circuit court did not abuse its discretion in ruling that the testimony of C.R. and D.M. was admissible under the pedophile exception to Rule 404(b).

Appellant contends that the circuit court failed to conduct a Rule 403 balancing test before admitting the testimony of C.R. and D.M. We do not address this argument because it is not preserved for our review. Although appellant raised a Rule 403 challenge to the



testimony, he failed to obtain a ruling from the circuit court. We do not address the merits of an argument on appeal when the appellant has failed to obtain a ruling from the circuit court. *See Henderson v. State*, 360 Ark. 356, 363, 201 S.W.3d 401, 406 (2005).

### B. Testimony of B.C.

The circuit court ruled that B.C.'s testimony was admissible under the pedophile exception to Rule 404(b) and, alternatively, that B.C.'s testimony was admissible under Rule 404(b) because it had independent relevance to issues before the jury, such as intent and motive. Appellant contends that the circuit court abused its discretion in admitting B.C.'s testimony under the pedophile exception to Rule 404(b) because B.C. was an adult when the alleged sexual conduct occurred. We agree.

Under the pedophile exception, we have approved allowing evidence of similar acts with the same or other *children* when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *E.g.*, *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). We decline to expand the pedophile exception to include evidence of a defendant's similar acts with an adult. Consequently, we hold that the circuit court abused its discretion in admitting B.C.'s testimony under the pedophile exception.

Appellant next contends that the circuit court abused its discretion in admitting B.C.'s testimony as independent-relevance evidence under Rule 404(b). We disagree. We find persuasive the State's contention that B.C.'s testimony was independently relevant to show that appellant engaged in a deliberate course of conduct to engage in oral sex with younger men and boys who were in his household and who lacked the ability to resist his

actions. Therefore, under the unique facts and very limited circumstances of this case, we hold that the circuit court did not abuse its discretion in admitting B.C.'s testimony as independent-relevance evidence under Rule 404(b).

Finally, appellant is mistaken in his contention that the circuit court failed to perform a Rule 403 analysis of whether B.C.'s testimony was more probative than prejudicial. After hearing B.C.'s testimony at the pretrial hearing, the circuit court specifically found that the probative value of B.C.'s testimony outweighed any prejudicial effect.

## V. *Rule 4-3(i)*

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2016), the record has been reviewed for all objections, motions, and requests that were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.

*Stanley & Woodard*, by:  *William J. Stanley*, for appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Brad Newman*, Ass't Att'y Gen., for appellee.