KENNETH S. HIXSON, Judge
Appellant Donald Lee Brown was convicted in a jury trial of second-degree murder committed against Damon Wilkins.
*313 Brown's sentence was enhanced pursuant to the jury's findings that he employed a firearm to commit the offense and that he committed the offense in the presence of a child. Brown's total prison sentence was thirty years.
Brown now appeals, raising one argument for reversal. Brown argues that the trial court abused its discretion in denying his motion for a mistrial after one of the State's witnesses allegedly made a comment about gangs during her testimony.[1] We find no error, and we affirm.
A mistrial is an extreme and drastic remedy to be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. Russell v. State , 306 Ark. 436, 815 S.W.2d 929 (1991). A trial court may grant or deny a motion for mistrial utilizing sound discretion, and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. See King v. State , 298 Ark. 476, 769 S.W.2d 407 (1989). Among the factors considered by this court on appeal in determining whether a trial court abused its discretion in denying a mistrial motion are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. Hall v. State , 2018 Ark. App. 474, 561 S.W.3d 333. The abuse-of-discretion standard is a high threshold that does not simply require error in the trial court's decision but requires that the trial court act improvidently, thoughtlessly, or without due consideration. Hortenberry v. State , 2017 Ark. 261, 526 S.W.3d 840.
On September 3, 2016, the victim, Damon Wilkins, was living with his fiancée Chamika Rogers and her four children. On that evening there were two separate disturbances in front of their house. During the second disturbance, Wilkins was shot multiple times and killed. Chamika and two of her children witnessed the shooting and testified that appellant Brown was one of two persons who had shot Wilkins.
Chamika testified that on the evening at issue, several men, including Brown and Chamika's nephew, came to her house. According to Chamika, there were verbal confrontations between Wilkins and both Brown and her nephew. The men left the scene, and the police arrived at the house shortly thereafter, having been called there by someone who had seen the altercation and reported that Wilkins had pulled a gun on someone. The police spoke with Chamika, and she told them that during Wilkins's argument with her nephew, Wilkins had a gun in his pocket but never pulled it out. The police left the scene.
Later that night, the men who had been there earlier, including Brown, returned to the house. According to Chamika, Wilkins was apologizing to the men and tried to defuse the situation. Then Chamika's sister drove up in a truck and said, "If somebody pulled a gun on my son, I'm going to blow this house up." Wilkins walked to the truck and spoke with Chamika's sister and told her that he never pulled a gun on anyone. Shortly thereafter, a man in a grey Cadillac drove up, exited the car, and tossed a gun to Brown. According to Chamika, these two men proceeded to where Wilkins was standing near the truck and both men shot him multiple times.
Chamika's son, E.R., also testified about the shooting. E.R. testified that before the *314 shooting, Wilkins "kept apologizing, and it didn't work." E.R. stated that he saw a an give a gun to Brown, after which Brown started shooting at Wilkins.
Chamika's daughter, C.R., testified next. It was during C.R.'s testimony that Brown made his motion for mistrial that is the subject of this appeal.
When the prosecutor was questioning C.R. about the men returning to the scene before the shooting, the following exchange occurred:
WITNESS : Don [Brown] was standing at the end of the driveway, still on the phone. He was on his phone. He said he was going to put that on the dogs is what he was gonna come back and do.
DEFENSE COUNSEL : May we approach.
TRIAL COURT : Hold on. Hold on a second.
WITNESS : I ain't lying.
TRIAL COURT : Hold on. Shh. Shh. Shh.
[ BENCH CONFERENCE .]
DEFENSE COUNSEL : There was a motion in limine about any gang testimony. And the State has just coached the testimony of the dogs kind of comment, which I think refers to Bloods.
TRIAL COURT : Uh-huh.
PROSECUTOR : Well, I will say that was not responsive to the State's question. That was something that was actually blurted out by the State's witness. And I don't know that that's clearly gang evidence.
TRIAL COURT : I didn't know either. I thought it was just talking about some dogs. I mean, I'm sorry. It's just a little different. But I mean, it was unresponsive. It wasn't something that they elicited from her, so, I mean, I'll overrule the objection.
PROSECUTOR : I mean, we'll certainly move on.
DEFENSE COUNSEL : We'd ask for a mistrial based upon the interjection of the gang subject because it violates the defendant's right to due process.
PROSECUTOR : The State intends to have no argument-I mean, we have zero argument with respect to that. And we don't intend to bring that up and didn't intend to bring it up. And that was something that was unresponsive by the witness.
DEFENSE COUNSEL : I'm not necessarily saying it's intentional, because it appeared to me to be this witness decided she had to interject that. And I don't think that these prosecutors have tried to do this on purpose, but it, in fact, was said.
TRIAL COURT : Well, I understand. I'll deny the request for a mistrial.
DEFENSE COUNSEL : Thank you.
C.R. then testified about the shooting. She testified:
When Damon is at my Aunt Tonya's car, I saw another car come up to our house. I saw a dude in grey Cadillac. I saw a grey Cadillac. Where I was when the grey Cadillac pulled up was I was standing in the middle of the yard. My sister was on the porch. That's Chamacia. What happened when the grey Cadillac pulled up was a little short dude by the name of Doughboy jumped out the car. Don did a little hands signal or whatever. And he tossed Don the gun and he creeped around Tonya's truck. And then Damon, he seen Don coming towards him with a gun. His last words was, "Hey, bro, don't do that." And they started shooting him up.
....
After Damon had been shot, Donald Brown left. He jumped in the grey Cadillac. To my knowledge, Damon did not *315 have a gun in his hand. He had his in his pocket.
In this appeal, Brown argues that the trial court abused its discretion in denying his motion for mistrial made during C.R.'s testimony. Brown asserts that C.R.'s testimony that she heard Brown say he "was going to put that on the dogs" was an impermissible reference to Brown's membership in a gang. Brown cites Jackson v. State , 359 Ark. 297, 197 S.W.3d 468 (2004), for the proposition that proof of a defendant's membership in a street gang is prejudicial to the defendant.[2] Brown also cites State v. Nance , 533 N.W.2d 557 (Iowa 1995), where the Iowa Supreme Court stated that evidence of gang membership is inherently prejudicial and appeals to the jury's instinct to punish gang members.
We reject Brown's argument. As an initial matter, it is not clear that C.R.'s statement about "dogs" was even a reference to gangs, much less evidence of Brown's membership in a gang. And as conceded by Brown below, C.R.'s statement was unsolicited and unresponsive to the State's questioning. The State never intended to interject gangs into the trial, made no argument to the jury with regard to gangs, and elicited no evidence about gangs. Moreover, Brown did not request an admonition for the jury to disregard the allegedly objectionable statement. It is a defendant's duty to request a curative instruction, and an appellate court will not determine that the trial court's decision to deny a mistrial motion was an abuse of discretion where an admonition to the jury could have cured the situation but no such admonition was requested. Moore v. State , 355 Ark. 657, 144 S.W.3d 260 (2004). For these reasons, we hold that the trial court did not abuse its discretion in denying Brown's motion for a mistrial.
Affirmed.
Gruber, C.J., and Brown, J., agree.

Prior to trial, Brown had made a motion in limine to exclude any evidence of gang activity, arguing that it was not relevant and prejudicial. The State agreed not to introduce evidence of gang activity.

In Jackson , our supreme court stated that a police officer's testimony that the appellant was a "slinger" and a "banger" was undoubtedly harmful to the appellant.