Cite as 2020 Ark. App. 506

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CR–20–189

| | | |
|---|---|---|
| RODERICK WATKINS | | **Opinion Delivered:** November 4, 2020 |
| | APPELLANT | APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT [NO. 12CR-18-263] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE TIM WEAVER, JUDGE |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

Roderick Watkins appeals his conviction of four counts of second-degree sexual assault contending that the Cleburne County Circuit Court erred by admitting the testimony of witness Linda Dill. We affirm.

### I. *Relevant Facts*

On November 21, 2018, Watkins was charged with four counts of second-degree sexual assault of four minor children, AE, RJ, KO, and ZT. Watkins filed a motion in limine seeking to prevent the State from presenting the testimony of Watkins's neighbor, Linda Dill. Watkins asserted that Dill's testimony regarding Watkins's interaction with an unidentified child were not related to the allegations against him, and her testimony would be both irrelevant and inadmissible character evidence. After a hearing on the motion, the court agreed that Dill's testimony was "of a different character" and more prejudicial than probative. The State pursued the matter further and requested that the court revisit the issue

if Dill could identify the child she saw Watkins with. The court agreed, and the trial proceeded.

At the October 3, 2019 trial, multiple witnesses testified that Watkins, an elder in their church whom they considered an authority figure and a mentor, sexually abused them or touched and massaged them on their feet, legs, buttocks, back, and chest. ZT testified that when he was a teenager, Watkins touched him on his buttocks twice. The first time, in November 2010, Watkins touched ZT's buttocks over his clothes at a football game, with his father sitting near him in the stands. The second time, when he was seventeen years old, Watkins touched ZT's buttocks under his clothes while they and others were gathered at a church member's house to watch a basketball game.

KO testified that her father occasionally preached in Watkins's church and that she and her family had a friendly relationship with Watkins. She stated that Watkins was physically affectionate and that he mentored her spiritually. KO explained that "if he told me to do something, I would have done it." In 2009, when she was nine years old, Watkins touched her on her vaginal area while she sat on his lap with a blanket over them. Other people, including her parents and sister, were in the room. AO, KO's sister, testified that Watkins also rubbed her vaginal area while she sat in his lap with a blanket over them. She explained that first he rubbed her back and legs, then he "reached down my pants and started rubbing my private area, my vagina." Again, other people were in the room when the abuse occurred, and AO explained that Watkins even conversed with her father as he was sexually abusing her "as if nothing was wrong." AO also stated that she considered Watkins a mentor.

AE, a thirteen-year-old boy who also attended the same church testified that Watkins had been a mentor to him and had babysat him. AE testified that once, while he was

2

watching a movie at Watkins's apartment, Watkins ran his hand up his leg and touched his penis. AE stated that before this incident, Watkins had rubbed his back, feet, and legs.

CJ, who was seventeen at the time of the trial, testified that Watkins had been like a grandfather to him, they took trips together, and he had slept at Watkins's house many times. CJ stated that six or seven years before the trial Watkins sexually abused him. CJ testified that Watkins began by rubbing his feet and legs and then worked his way up to his genitals, at which point CJ pushed Watkins's hands away. CJ stated that he had seen Watkins put his hands inside his cousin RJ's shorts and rub his back "more than ten times." MJ, CJ's sister, stated that she, too, had been abused by Watkins, who had put his hand on her thigh under her dress while she was a passenger in his car and that he had put his hand over her underwear close to her vaginal area. When she was ten or eleven years old, Watkins had come into the bathroom when she was showering, opened the curtain, and watched her in the shower while he shaved. She also testified that she had seen Watkins rub RJ's feet, legs, and back under his shirt.

RJ testified that his family and Watkins attended the same church and that before his sexual abuse was known, they had a close relationship. RJ explained that Watkins was like a grandfather to him and that he saw Watkins about twice a week when they lived in Heber Springs, often at Watkins's home. RJ stated that he had helped Watkins clean, do chores, and maintain the apartment complex Watkins lived in and that he had frequently slept at Watkins's house. RJ explained that he could not remember before the age of ten, but that the first instance of abuse occurred around then. RJ described Watkins's abuse, explaining that at first, Watkins would rub his back, then "creep downward" and "[a]t some point, he touched me underneath my clothes." Watkins touched his buttocks, penis, and testicles. RJ

stated that the incidents blended together, and "it was hard to differentiate one from the other." RJ explained that he did not know he was being abused at the time, and he believed the behavior was normal.

RJ's father, Joseph, also testified that his family and Watkins attended the same church and that his family had been very close with Watkins. Joseph stated that Watkins was an authority figure and like a grandfather to RJ and that RJ had frequently spent time alone with Watkins, helping him with chores around Watkins's apartment, including painting and gardening. Joseph testified that RJ had been in therapy for behavioral issues since he was around seven or eight years old. About a year before the trial, after Watkins was "disfellowshipped" from the church, RJ told his parents that Watkins had sexually abused him. Joseph explained that he had never seen Watkins abuse RJ but that he recalled having seen Watkins scratch RJ low on his back, his legs, inside his thighs and arms, and "down his back and into his shorts of underwear. I never saw it as too far but just questionable." Marissa Pett, also a member of the same church, testified that in August 2016, when RJ was around thirteen years old, she saw Watkins absentmindedly running his hand up and down RJ's inner thigh. RJ's aunt testified that she had seen Watkins rub and touch RJ under his shirt.

During the witnesses' testimony, the State informed the court that Dill stated she would recognize the child she saw with Watkins in the apartment across from her, and she described him as having a slight build, dark hair, and glasses. Dill was taken to the witness room, and she identified RJ among the people gathered there as the child she had seen with Watkins at her apartment complex. Watkins responded that Dill did not witness anything criminal; thus, her testimony was prejudicial and did not have probative value. The State

4

asserted that Dill's testimony would describe the same type of grooming and preparatory conduct that the previous witnesses had described. The court ruled that Dill was a fact witness, and her testimony was permissible if she did not speculate and only described what she saw. Dill took the stand and testified that she did not attend church with Watkins, but they lived in the same apartment complex. Dill recalled that around March or April 2017, she saw Watkins painting an apartment with a slim, dark-haired boy with glasses, about five feet tall and around eleven years old. Dill identified RJ as the same boy she had seen in the apartment with Watkins. She explained that Watkins and the boy were painting apartment number eleven across the hall, when she saw Watkins "kissing his head, and hugging him real tight, massaging him. The next thing I noticed was he was running his hand up his shirt. I thought it was kind of odd. Mr. Watkins saw me, and he shut the door."

Watkins moved for a directed verdict, arguing that the testimony was "vague," and there was no indication of sexual gratification when the contact occurred. The circuit court denied the motion.

Both Watkins and his wife, Rebecca, testified that though he had been physically affectionate, he had never sexually abused any children. Watkins denied that he had been "disfellowshipped" from the church for sexually abusing children, explaining that he was disfellowshipped because he "did not accept counsel well enough" and had engaged in "brazen conduct." At the close of all evidence, Watkins renewed his motion for a directed verdict, and the circuit court denied the motion. The jury convicted Watkins of four counts of second-degree sexual assault and sentenced him to twenty years on each count. This appeal followed.

## II. *Discussion*

On appeal, Watkins argues that the circuit court erred in denying his motion to exclude Dill's testimony because the testimony was not probative of criminal conduct, and it was highly prejudicial to him. We disagree.

Challenges to an evidentiary ruling are reviewed under the abuse-of-discretion standard. *Hortenberry v. State*, 2017 Ark. 261, 526 S.W.3d 840. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* Additionally, an evidentiary decision will not be reversed absent a showing of prejudice. *Hicks v. State*, 2017 Ark. 262, 526 S.W.3d 831.

Relevant evidence is evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Ark. R. Evid. 401. As a general matter, all relevant evidence is admissible. Ark. R. Evid. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Ark. R. Evid. 403.

A person commits second-degree sexual assault if the person is eighteen years old or older and engages in sexual contact with another person who is less than fourteen years of age and not the person's spouse, or if the person engages in sexual contact with a minor and is the minor's guardian, temporary caretaker, or a person in a position of trust or authority over the minor. Ark. Code Ann. § 5-14-125(a)(4)(A)(iv), (b)(1) (Supp. 2019). "Sexual contact" means any act of sexual gratification involving the touching, directly or through

clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(11).

The circuit court did not abuse its discretion in admitting Dill's testimony. Dill's statement that she saw Watkins and RJ doing chores together at the apartment complex and that she saw Watkins kissing and massaging RJ and putting his hands up RJ's shirt is relevant evidence of Watkins's plan to use his position of authority to gain access to children and touch them for his sexual gratification. Dill's testimony corroborated RJ's testimony that Watkins was often his caretaker in a position of authority over him, Watkins sexually assaulted him when he was acting as a mentor and caretaker, and Watkins routinely led up to sexual assault by hugging, kissing, rubbing, and massaging him. We cannot say that the circuit court acted improvidently, thoughtlessly or without due consideration when it determined that Dill's testimony further corroborated RJ's testimony and was helpful for the jury to determine whether Watkins had sexually assaulted RJ.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*McKay Law Firm, PLLC*, by: *Matthew McKay*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.