Cite as 2025 Ark. App. 333

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-24-420

| | |
|---|---|
| | **Opinion Delivered** May 28, 2025 |
| JAMES ADAM WRIGHT | |
| APPELLANT | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14CR-23-88] |
| V. | |
| STATE OF ARKANSAS | HONORABLE DAVID W. TALLEY, JR., JUDGE |
| APPELLEE | |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

James Adam Wright appeals his conviction for possession of a firearm by certain persons. He asserts that there was insufficient evidence to prove that he constructively possessed a firearm and that the circuit court abused its discretion by denying his request for a mistrial and by denying his motion to dismiss his counsel, which should be construed as a motion for a continuance. We affirm.

On 2 February 2023, Wright's parole officer, Keesha Humphrey, conducted a parole search of Wright's room at his aunt's residence after receiving information that he was in possession of contraband. She and other officers found a loaded gun, a "green leafy substance," money, and other items. This evidence was taken to the Magnolia Police Department, where officers noticed that the money was counterfeit. In April 2023, the State charged Wright as a habitual offender with possession of a firearm by certain persons.

A jury trial was convened on 27 March 2024. The State first called Lanetta Wright-Beasley, who testified that Wright had been living with her and her boyfriend, Andrew Hendrix. Wright had his own room, and Beasley saw him come out of his room with a firearm. Beasley told her sister, Jacqueline Harvey, about the firearm. On cross-examination, Beasley confirmed that a man named Theodore Robinson had lived in the home at one time and that he "came and went from the home." She also confirmed that she is on disability and has some memory problems. She said that Wright had "a lot of friends coming in and out." She also said that her son, Mariano Collins, had previously stayed in the bedroom now used by Wright, but Collins had moved to Crossett when he got married and had not been living in the house at the time of this incident. Collins had left clothes in the bedroom, but Beasley could not say if he had left any other property behind when he moved out. Beasley also said that the day the police came to her house, Hendrix was there and getting ready for work.

Beasley's sister, Jacqueline Harvey, testified that Beasley contacted her and told her that Wright had a gun in his room. Harvey then contacted the probation and parole office and told them. She did not see the gun herself.

Humphrey testified that in February 2023, she received a phone call stating that Wright had "some guns and drugs" at his residence and that he "was not in a good state of mind to have those kind of things in the home." She and two other officers visited Beasley's home, established which room was Wright's, and searched his room. They found a handgun, ammunition, a "green leafy-like substance," and "a shoebox full of alleged counterfeit hundred-dollar bills." The gun was sitting on top of a dresser to the right of the

2

bedroom door. On cross-examination, she stated that they did not find any identification or mail belonging to Wright, did not inquire to whom the gun was registered, and did not fingerprint the gun.

Another officer that helped search Wright's room, Lynn Delaney, testified that Beasley's residence had been Wright's registered address since 2002. She also stated that she and the officers were directed to Wright's room and that she observed a handgun on top of a dresser. On cross-examination, she echoed Humphrey's statements that they had not found any mail or other identification belonging to Wright, had not checked the firearm's registration status, and had not fingerprinted the firearm. After the State rested, the defense moved for a directed verdict and argued,

> I don't believe that [t]he State has met their burden showing that Mr. Wright possessed the weapon. He was not home at the time. There's been testimony to that. There has been testimony that numerous people lived in the home and numerous people were in and out of the home and I don't believe that [t]he State has proven that he exercised ownership, control or dominion over the weapon.

The court denied the motion, and the defense called George Barnes, who participated in the search of Wright's room. He recalled seeing a man at Beasley's house when he and the other officers arrived, and he said that the man "came from down the hallway and he was in the kitchen." Wright's mother, Andrea Beal, testified that Collins had married on 18 March 2023.

The defense renewed its motion for directed verdict, which was denied. The jury found Wright guilty and recommended a sentence of twenty-five years' imprisonment, which the court accepted. The court entered the sentencing order on 3 April 2024. Also on April 3, Wright's current counsel and proposed new counsel filed a joint motion to

3

appoint new counsel for direct appeal. On April 5, the court granted the motion, and Wright's new counsel filed a timely notice of appeal.[1]

## I. *Sufficiency*

Wright first asserts that there was insufficient evidence to prove that he constructively possessed the firearm found by police. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Bens v. State*, 2020 Ark. App. 6, 593 S.W.3d 495. Substantial evidence is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

A person commits the offense of possession of a firearm by certain persons if the person has been convicted of a felony and possesses or owns a firearm. Ark. Code Ann. § 5-73-103(a)(1) (Repl. 2016). The State need not prove actual possession of contraband to prove possession; it may be proved by constructive possession, which is the control or the right to control the contraband. *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002). In

---

[1]On 21 May 2024, Wright filed a pro se petition for postconviction relief pursuant to Ark. R. Crim. P. 37.1. However, Wright is not entitled to accept appointment of counsel and also proceed pro se. *Hamilton v. State*, 348 Ark. 532, 74 S.W.3d 615 (2002). The circuit court did not address the petition and lost jurisdiction when the record was lodged on 1 July 2024.

4

cases involving joint occupancy of the premises where the contraband is found, some additional factors must be present to link the accused to the contraband. *Loggins v. State*, 2010 Ark. 414, 372 S.W.3d 785. Those factors include (1) that the accused exercised care, control, or management over the contraband and (2) that the accused knew the matter possessed was contraband. *Id.* Control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Id.*

Wright contends there was no proof that the room searched by the officers was his room, but there was evidence that another man (Collins) stayed in that room and did not move out until after this incident. There were also "numerous" people who lived in the home and were present when the officers found the firearm. He argues that the police did not find any form of identification in the bedroom to show that it was his room, that they did not fingerprint the firearm, and that no one saw him in possession of a firearm. Finally, Wright cites several decisions in which this court or the supreme court held that there was insufficient evidence of constructive possession.

We hold that substantial evidence supports Wright's conviction.[2] The jury heard testimony that Wright was living with Beasley, and she identified which bedroom was used

---

[2]We note that the State asserted in its brief that Wright's argument is not preserved because his directed-verdict motion lacked specificity. It argues that Wright did not articulate in his motion what he now argues on appeal—that insufficient linking factors established that he constructively possessed the handgun discovered inside the jointly occupied residence—and that any argument raised in his renewed motion was too late. We hold that Wright's directed-verdict motion was sufficient to preserve his argument for appeal.

by Wright. In addition, Beasley testified that she saw Wright come out of his bedroom holding a firearm. The jury also heard testimony that the officers found a handgun in plain view on top of a dresser in that bedroom. The jury is the trier of fact, and the jury is free to believe all or part of a witness's testimony and to resolve any questions of conflicting testimony and inconsistent evidence. *Lowe v. State*, 2016 Ark. App. 389, 500 S.W.3d 176.

## II. *Mistrial*

As noted above, Humphrey testified that along with the firearm, she and other officers also found "a shoebox full of alleged counterfeit hundred-dollar bills." The defense objected on relevance grounds, and the court sustained the objection and admonished the jury to disregard the statement. The State's direct examination continued, and the defense performed its cross-examination. After a lunch break, court resumed, and the defense moved for a mistrial based on Humphrey's statement about the counterfeit money. The court denied the motion, reasoning that because it had instructed the jury to disregard the statement and the testimony had resumed quickly, there was no prejudice. The court also found that "given what the actual charge is before the jury," the reference to the counterfeit money "would [not] make a whole lot of difference."

Wright argues that the circuit court abused its discretion in denying his motion for a mistrial. A mistrial is an extreme remedy that will be granted only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Anderson v. State*, 2023 Ark. App. 397, 675 S.W.3d 453. The circuit court is in a favorable position to evaluate potential prejudice, so this court defers to its discretion in these matters. *Id.* This court will not reverse the circuit court's decision in the absence of an abuse of discretion. *Id.* The

6

abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Brown v. State*, 2019 Ark. App. 36, 568 S.W.3d 312.

Wright acknowledges the circuit court's admonishment to the jury but asserts that "there are instances where a statement is so prejudicial that an admonition could never cure it." He contends that the jury heard he was an alleged counterfeiter and that "the only way a jury could have interpreted this evidence was as propensity evidence showing that Wright must have been guilty of the charged offenses based on this irrelevant proof of an unrelated, other crime." Wright also asserts that this prior-bad-acts evidence was introduced in violation of Ark. R. Evid. 404(b) to show his bad character or propensity for crime, and but for the erroneous admission of this evidence, there is a reasonable probability he would have been acquitted or received a lesser sentence.

We hold that that Wright's mistrial motion was not timely. A motion for mistrial must be made at the first opportunity. *Ellis v. State*, 366 Ark. 46, 233 S.W.3d 606 (2006). The reason for this is that a circuit court must be given an opportunity to correct any perceived error before prejudice occurs. *Id*. Here, defense counsel did not move for a mistrial when she objected to Humphrey's testimony; the motion was not made until after direct examination concluded and the defense had performed its cross-examination. Thus, the denial of Wright's motion for a mistrial is not preserved for our review. Likewise, Wright failed to raise any argument based on Rule 404(b) below, so that point is also not preserved for our review. *See McElroy v. State*, 2025 Ark. App. 270, ___ S.W.3d ___ (the appellate court cannot review an issue raised for the first time on appeal).

### III. *Continuance*

Wright was arrested on 2 March 2023, and the court appointed a public defender, Sandi O'Brien, to represent him. Wright hired private counsel, Lott Rolfe, in May 2023, and O'Brien was relieved from the case. However, Rolfe withdrew from the case in December 2023, and the court reappointed O'Brien on 4 January 2024. At the January 4 hearing, Wright explicitly stated that he did not want any continuances and that he was "ready to go."

On 22 March 2024, five days before the scheduled jury trial, O'Brien visited Wright, who informed her that he no longer wanted her to represent him. On March 25, two days before trial, the circuit court convened a hearing.

Wright told the court that O'Brien had "not been meeting up to the standards" he expected. When asked by the court if he would be representing himself, Wright said that he would like an attorney appointed to represent him. The court explained that he had been appointed an attorney and his choices were either O'Brien continued to represent him, he represented himself, O'Brien could sit as standby counsel, or he could retain a private attorney. If he hired a private attorney, he or she would have to be ready to proceed in two days. The court also explained that Wright could file a formal complaint (a Rule 37 petition) after the trial if he had any grievances about O'Brien's representation. Wright acquiesced to O'Brien's continuing as his attorney.

On appeal, Wright argues that his request to dismiss his counsel was in effect a motion for continuance and that the circuit court abused its discretion in denying that motion. The supreme court has held that in circumstances so close to trial, a motion to change counsel is

8

properly treated as a motion for continuance since a change of attorneys would require the granting of one. *Edwards v. State*, 321 Ark. 610, 906 S.W.2d 310 (1995). Once competent counsel has been obtained, any request for a change in counsel must be balanced against the public's interest in the prompt dispensation of justice. *Raino v. State*, 2021 Ark. App. 331. If a change of counsel would require a trial to be postponed due to inadequate time for new counsel to prepare for trial, "in denying or granting the change, the court may consider such factors as the reasons for the change, whether other counsel has already been identified, whether the defendant has acted diligently in seeking the change, and whether the denial is likely to result in any prejudice to defendant." *Baugh v. State*, 2020 Ark. App. 191, at 5, 597 S.W.3d 156, 159 (quoting *Leggins v. State*, 271 Ark. 616, 619, 609 S.W.2d 76, 78 (1980)).

A circuit court retains broad discretion to grant or deny a continuance for purposes of obtaining new counsel. *Brewer v. State*, 2017 Ark. App. 335, 525 S.W.3d 24. A circuit court's denial of a continuance will not be overturned absent a showing of abuse of that discretion. *Raino*, *supra*. Further, even if the circuit court abused its discretion, an appellant must also demonstrate prejudice amounting to a denial of justice. *Id.*

Wright contends that the court forced him to be represented by an attorney whose lack of preparation was materially prejudicial to him. He points out several ways in which his counsel was deficient including waiving challenges that were available to her, withdrawing potential evidence rather than proffering it, and failing to request an instruction informing the jury that any sentence it imposed would be served in its entirety without eligibility for parole.

Wright also argues that the circuit court erred by forcing him to choose between accepting his "insufficient" counsel or representing himself. He contends that the court did not make any inquiry into whether he had knowingly and intelligently waived counsel before "threatening to make [him] represent himself at trial if he would not accept his appointed counsel." Instead, the court's focus was on keeping the trial on schedule.

We hold that the circuit court did not abuse its discretion in denying the request for continuance to obtain new counsel. Wright had no other counsel identified; because of his indigency, he required representation from the public defender's office. Although a criminal defendant is generally entitled to the counsel of his choice, this right "does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *see also U.S. v. Espino*, 317 F.3d 788 (8th Cir. 2003) (an indigent defendant has no right to demand of a court that a particular attorney be appointed to represent him). Nor did Wright show the required diligence by waiting until five days before trial to raise the issue.

Finally, Wright has failed to show how he was prejudiced by the denial of the continuance. As a habitual offender convicted of a Class B felony, Wright faced a potential sentence of forty years' imprisonment but was instead sentenced to twenty years' imprisonment. Ark. Code Ann. § 5-4-501(a)(2)(C) (Supp. 2021). A defendant who is sentenced within the statutory range—and (well) short of the maximum sentence—cannot establish prejudice. *Tate v. State*, 367 Ark. 576, 242 S.W.3d 254 (2006).

Affirmed.

WOOD and BROWN, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.