Cite as 2026 Ark. App. 260

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-25-597

| | |
|---|---|
| KRISTOPHER LEE VICKROY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered April 29, 2026<br><br>APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT<br>[NO. 71CR-23-110]<br><br>HONORABLE H.G. FOSTER, JUDGE<br><br>AFFIRMED |

**CASEY R. TUCKER, Judge**

A Van Buren County Circuit Court jury convicted appellant Kristopher Vickroy of rape. On appeal, he asserts that the circuit court erred in admitting the testimony of a nonvictim child witness (MV2) under the pedophile exception to Arkansas Rule of Evidence 404(b). In a subpoint, Vickroy argues that the admission of the nonvictim child witness's testimony violated Arkansas Rule of Evidence 403 due to unfair prejudice. We affirm.

## I. *Factual Background*

On September 14, 2023, the State charged Vickroy with rape pursuant Arkansas Code Annotated section 5-14-103 (Supp. 2023), alleging that he engaged in sexual intercourse or deviate sexual activity with another person who was under the age of fourteen by forcible compulsion. The State later amended the information to allege that Vickroy violated Arkansas Code Annotated section 5-14-103(a)(3)(A) in that on September 4, 2023,

he engaged in deviate sexual activity with a minor victim (MV1), a person less than fourteen years of age, thereby committing the offense of rape. The case proceeded to trial on April 22, 2025.

The evidence at trial was that Vickroy was MV1's older cousin (MV1's mother is his first cousin). Vickroy was approximately twenty-five years older than MV1. In September 2023, when MV1 was eleven years old, several family members, including Vickroy, went on a family camping trip in Missouri. Vickroy drove MV1; his niece; and his niece's friend, MV2, to their respective homes after the trip. After dropping off the other girls, Vickroy told MV1 that he needed to stop by his house in Fairfield Bay because he needed to use the restroom. After Vickroy went inside and did not return, MV1 entered the house to get a drink of water. While she was in the house, Vickroy called to her from his bedroom where he was lying on the bed and asked her to come into the bedroom. MV1 stated she did not want to, but Vickroy insisted, so she went into his bedroom. He then pulled her onto the bed with him and proceeded to put his hand inside her pants and digitally penetrate her vagina. MV1 testified that she was screaming at Vickroy to stop and get off of her. He stopped when she kicked him, and MV1 ran out of the house and returned to his truck.

Once he was inside the truck, Vickroy offered MV1 money in exchange for her silence. He told her that if she told anyone what he had done it would ruin his life. MV1 asked Vickroy to take her home. On their way from Fairfield Bay to the Vilonia area, they drove past MV1's grandmother's house in Clinton. Vickroy refused MV1's request to take her to her grandmother. MV1 began texting her mother, asking for help. She told her that

2

Vickroy had touched her inappropriately and that she was scared. Her mother instructed her to act normal and just get home. When she arrived home, MV1 went to her mother's bedroom, crawled into her mother's bed, and cried.

After MV1 told her mother what had happened in more detail, MV1's mother contacted Vickroy through Facebook Messenger. He denied that he had done anything to MV1, claiming he had accidentally touched her breast while they were playing. MV1's mother took her to the emergency room, where she was referred to Arkansas Children's Hospital. At Arkansas Children's Hospital, MV1 was examined by a sexual assault nurse examiner who also gathered the evidence for the rape kit. Upon testing, the DNA tests revealed the presence of male DNA, but there was not enough DNA to identify a specific individual.

Following this incident, MV1 confided in her mother that this was not the first time Vickroy had touched her inappropriately. When she and Vickroy were watching a movie together one night, he began tickling her, which he often did, and then he digitally penetrated her vagina, asking her if it tickled. MV1 did not report this incident to anyone because she was scared.

Over Vickroy's objection, the circuit court allowed the State to introduce the testimony of two witnesses under the pedophile exception to Arkansas Rule of Evidence 404(b). The first witness, who was an adult at the time of trial, testified that she knew Vickroy when she was young because he was friends with her older brother and his friends. Her brother had told Vickroy to stay away from her because she was young—she was twelve or

thirteen years old at the time. In spite of the warning, Vickroy went to the skating rink where the witness was with friends, drove the young witness to a different location, and had sexual intercourse with her.

MV2 testified that she knew Vickroy because she was good friends with his niece. MV2 had spent the night at her friend's grandfather's house, where Vickroy lived, a couple of times. On one such occasion, MV2 and her friend got into Vickroy's bed when he was not at home. When Vickroy came home, he got into bed with them. Vickroy started tickling the girls, then he grabbed MV2's wrist and pulled her hand toward "his private area," which made her uncomfortable. He did this more than once, though she told him to stop. Later that night, while play-fighting over the remote control, Vickroy touched the underneath side of MV2's thigh in a way that made her feel uncomfortable. MV2 was eleven years old when these acts occurred.

The jury returned a verdict finding Vickroy guilty of rape. It fixed his sentence at a term of forty years in the Arkansas Division of Correction. The court sentenced Vickroy accordingly, and Vickroy timely appealed.

II. *Admissibility of MV2's Testimony*

A. The Pedophile Exception

Vickroy argues that the circuit court erred in allowing MV2's testimony under the pedophile exception to Rule 404 because the conduct she described was not sufficiently similar to the conduct with which Vickroy is charged. We disagree.

Generally, evidence of a defendant's prior bad acts is not admissible to show he or

4

she acted in conformity therewith. Ark. R. Evid. 404(b). However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Arkansas recognizes a separate "pedophile exception" to the general rule of inadmissibility of a defendant's bad acts to prove his guilt. *Hortenberry v. State*, 2017 Ark. 261, 526 S.W.3d 840. This court has explained:

> Additionally, the pedophile exception allows the State to introduce evidence of a defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with the person or class of persons with whom the defendant has an intimate relationship. *Hortenberry v. State*, 2017 Ark. 261, 526 S.W.3d 840. The rationale for this exception is that this evidence helps to prove the depraved sexual instinct of the accused. *Id.*

*Lemon v. State*, 2026 Ark. App. 30, at 4, 729 S.W.3d 184, 187. The court in *Lemon* went on to explain the necessary factors for this exception to apply: "(1) a sufficient degree of similarity between the evidence to be introduced and the charged sexual conduct and (2) evidence of an "intimate relationship" between the defendant and the victim of the prior act." *Id.* at 4–5, 729 S.W.3d at 187. A third requirement is noted in *Holland v. State*, 2015 Ark. 341, 471 S.W.3d 179, in which the supreme court observed that evidence admitted under Rule 404(b) must not be too separated by time, making the evidence unduly remote.

The evidence of Vickroy's conduct with MV2 was similar to his sexual conduct with MV1. Both victims were eleven-year-old girls. MV1 testified that Vickroy would begin by tickling her, then use that as cover for his sexual misconduct, including both the time of the offense for which he was charged and the first time he digitally penetrated her vagina and

5

asked whether it tickled. MV2 testified that Vickroy began tickling her and, under the guise of playful tickling, repeatedly tried to move her hand toward his penis. There was a sufficient degree of similarity between Vickroy's actions with MV2 and MV1 to meet the similarity requirement of the pedophile exception.

Vickroy argues that the circuit court should not have admitted MV2's testimony because Vickroy's conduct as described by her was, "at most, ambiguous horseplay, not a sexual act." We disagree. We acknowledge, as asserted by Vickroy, that tickling alone is not necessarily sexual conduct. However, MV2's testimony was clear that Vickroy repeatedly tried to pull her hand toward his penis. MV2 repeatedly told him to stop and pulled her hand away. The fact that MV2's resistance prevented Vickroy from succeeding in his mission did not transform his conduct from being sexual in nature into mere "horseplay."

As to the required intimate relationship, the supreme court has explained that it is not necessary that the defendant be related to the witness or live in the same household. *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998). In *Hernandez* the court noted that intimate relationships have been found when the witness was visiting the accused for a week and when the accused was a babysitter of the witness. *Id.* The court looked to *Black's Law Dictionary* (6th ed. 1990) for guidance as to what constitutes an intimate relationship, noting, "'Intimate' is defined as 'close in friendship or acquaintance, familiar, near, confidential.'" *Id.* at 309, 962 S.W.2d at 760. The court in *Hernandez* found a sufficiently intimate relationship between the witness and the accused because the witness knew the accused's family and was allowed to spend the night in the home, and when the sexual misconduct

6

occurred, the witness was spending the night in the home. This is consistent with the case at bar in which the witness knew Vickroy and his family and was spending the night at his father's home where Vickroy was living at the time.

The incident about which MV2 testified happened within a year of the incident involving MV1, which more than meets the requirement that the two incidents not be remote in time. *See Hernandez, supra*. The testimony of MV2 was admissible under the pedophile exception.

### B. Admissibility Under Arkansas Rule of Evidence 403

Having determined that MV2's testimony met the requirements to be admissible under the pedophile exception to Rule 404, we now turn to the question of whether it was admissible under Arkansas Rule of Evidence 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Ark. R. Evid. 403. Even if evidence falls under the pedophile exception to Rule 404, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Jones v. State*, 2025 Ark. App. 446, 721 S.W. 3d 802. The conduct described by MV2 was probative of Vickroy's deviate sexual impulse to sexually assault young females. *See Jones, supra*. Moreover, evidence that Vickroy had raped MV1 was already before the jury in the form of forensic and testimonial evidence. And an adult had testified that Vickroy had engaged in sexual intercourse with her when she was only twelve or thirteen years old. Thus,

there was little danger of unfair prejudice resulting from admitting MV2's testimony under the pedophile exception. *See Meacham v. State*, 2025 Ark. 27, 707 S.W.3d 473. MV2's testimony was probative of Vickroy's proclivity for engaging in sexual conduct with prepubescent females, and that probative value was not outweighed by the danger of unfair prejudice. *See id.*

The circuit court exercises broad discretion in making evidentiary determinations. *Jones*, *supra*. We will not reverse the circuit court's ruling absent an abuse of that discretion and resulting prejudice. *Id.* The circuit court did not abuse its discretion in finding that MV2's testimony was admissible.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Mothershed Law, PLLC*, by: *La'Donnia M. Mothershed* for appellant.

*Tim Griffin*, Att'y Gen., by: *Dalton Cook*, Ass't Att'y Gen., for appellee.